**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TODD FIKE, on behalf of himself and others similarly situated, | ) ) ) | 1:09-cv-02558 |
| Plaintiffs, | ) | |
| | ) | Judge Dow |
| v. | ) ) | Magistrate Judge Keys |
| The Bureaus, Inc., | ) | |
| Defendant. | ) | |
| | ) | **Jury Demanded** |

# PLAINTIFF'S RESPONSE TO THE BUREAUS, INC.'S MOTION FOR CLARIFICATION AND EXTENSION, AND COMBINED <u>MOTION FOR RULE TO SHOW CAUSE</u>

Plaintiff respectfully files this joint response to TBI's motion for clarification and Motion for Rule to Show Cause.  In support of this motion, plaintiff states:

1.      On November 13, 2009, after full written briefing and oral argument lasting approximately one hour, this Court granted plaintiff's motion to compel "in its entirety."  The Court ordered The Bureaus, Inc. ("TBI") to provide documents and information and documents and things within 30 days.  TBI filed a Fed.R.Civ.P. 72 objection to a portion of the order, and this Court stayed TBI's production of those materials until 28 days after any ruling from the District Judge.

2.      Aside from the objection, this Court ordered that substantial materials regarding the defendant's autodialer and prerecorded messages be produced.  There is no need to "clarify" the order compelling these materials.  The Transcript of Proceedings ("Transcript")

shows that the Court clearly and unequivocally granted plaintiff's motion in its entirety.[1] TBI's motion improperly seeks to re-hash arguments that have already been rejected. The motion for clarification should be denied, and the Court should issue a rule for TBI to show cause why it has not complied with the Court's order and order appropriate sanctions.

### Materials Compelled and Not Produced

3.      On December 10, 2009, defense counsel produced the affidavit attached as Exhibit A, along with a computer disc containing some materials as the bulk of its production pursuant to the motion to compel. Plaintiff protested, pointing out that the affidavit is equivocal in that it states only what TBI *has produced*, and does not state that TBI has provided complete responses to the compelled interrogatories and document requests. TBI produced some additional documents, but made material misstatements n the process.

4.      On December 10, 2009, defense counsel Pete Pederson called the undersigned, and asked the undersigned "what do you want?" Apparently, defense counsel believes that the day before a document production pursuant to a court order is due is the proper time for parties to start working together to figure out what documents and information should be produced.

5.      This motion identifies four categories of materials that plaintiff's counsel knows have not been provided. For each category, plaintiff identifies (1) the portion of the Motion to Compel where the issue was raised, (2) TBI's response brief arguing that the materials should

---

[1] Plaintiff obtained the original transcript of proceedings on December 8, 2009 at approximately 8:30 pm. Defendant did not order the transcript to assist it with complying with the Court's order, and did not have the transcript for its objection before Judge Dow. The cost of the original transcript was $148.75.

not be compelled, (3) plaintiff's reply arguments and (4) the portion of the transcript of proceedings where this Court ordered the materials compelled.

6.    **Emails**:  The emails that are the subject of TBI's "clarification" motion were squarely part of the motion to compel, and were unequivocally compelled.  The emails TBI describes fall within several document requests.  For example, Document Request 7 asked for:

> All documents, contracts, emails or agreements concerning telephoning debtors to collect debts [using an "automatic telephone dialing system" or prerecorded or artificial voice message].

This item was compelled, along with several others including document requests 8, 9, 10, 11 and 12.  Mot. at 12-13; Resp. at 13-14; Pl. Reply at 7-8; Transcript at 26-28. Plaintiff's counsel specifically noted, and the Court agreed, that the artificial limitation relating to a "random or sequential number generator" was improper.  Yet the 12/8/2009 Sangalang Affidavit (her third submitted in this case "Sangalang III") maintains this improper restriction, and TBI maintains its already rejected contention that plaintiff should not get materials that TBI does not think he "needs."

7.    Plaintiff's counsel suspects that no search of TBI's email system happened until at least December 18, 2009, and that at no time has counsel performed a search.  Based upon telephone conversations on December 10, 2009, plaintiff's counsel does not believe that defense counsel knows what sort of search its client conducted, which raises very serious issues under *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) (holding that counsel has an affirmative duty to oversee a client's search for electronic documents and ensure that it is sufficient).

8.      On Thursday December 10, 2009, at 3:33 pm, Mr. Pederson wrote Mr. Burke an email explaining that there are "hundreds or thousands of emails between Marian Sangalang, on the one hand, and the system vendor and TBI's employees, on the other, which mention the dialing system because they relate to technical support and how to use the dialing system." This, the day before the production was due, was the first time TBI admitted that it had any emails at all relating to the autodialer.  Before then, TBI steadfastly assured the Court and plaintiff's counsel that everything had been produced:

> Your Honor, <u>we produced all the information related to TCPA compliance</u> and related to whether the dialing system can store or produce numbers with a random or sequential number generator.  [Transcript of November 13, 2009, hearing at 27, emphasis added.]

This statement was materially false.[2]

9.      On December 11, 2009, counsel for TBI produced several pages of TCPA compliance materials that had previously not been produced, and appear to come from Ms. Sangalang's email inbox.  <u>Exhibit B</u>.  Also on December 11, 2009, defendant filed a motion to "clarify" whether this Court's order granting plaintiff's motion to compel in its entirety compels TBI to produce emails "that mention its telephone dialing system."  The motion takes a critical tone, attempting to make plaintiff seem unreasonable in demanding what this Court ordered.

10.     Even though the December 11, 2009 motion for clarification again states that TBI had already "produced all the additional materials" that were compelled, on December 15,

---

[2] Plaintiff's counsel does not like to expose another attorney's false statements to the Court, but doing so is necessary here to demonstrate how difficult it has been to litigate this case.  Plaintiff's counsel simply cannot trust anything defense counsel says about discovery.  Even the affidavits signed by the defendant are equivocal and otherwise questionable.  For example, in TBI's objection to this Court's order compelling it to produce evidence from third parties relating to its affirmative defense, Marian Sangalang states that "TBI does not have the right under its agreements with third party creditors to compel them to produce materials bearing on the debtors or the debts TBI seeks to collect."  However, TBI has obtained and produced the *plaintiff's* materials that it received from a third party creditor, and TBI's contract with plaintiff's creditor is an *oral* contract.

2009, defense counsel sent the undersigned emails from 2005, <u>Exhibit B</u> that are not only related TCPA compliance, they are also directly related to plaintiff's class FDCPA claim, 15 U.S.C. § 1692f(5), which TBI has moved to dismiss. These cannot be attached to this motion because defense counsel labeled them "confidential" pursuant to the protective order in this case. Plaintiff has challenged this designation.

11.    Defendant has demonstrated that it cannot be trusted to be the "gatekeeper" of emails that are responsive or "relevant" as it urges in paragraph 6 of its motion. No clarification is needed; all of the emails have been compelled, and there is no reason to modify or restrict the scope of the order.

12.    **Class List**: Defendant has also not produced a response to interrogatory 9, which asks for the class members' identities, the number and dates of autodialed calls to each class member and the number and dates of each prerecorded message to each class member. These materials are not related to the merits of class certification, and are in the possession of TBI, so they are not stayed as being part of the objection to Judge Dow. Mot. at 6-7; Resp. at 5; Reply at 4; Transcript at 17-18.

13.    **Statistics**: Further, there have been no statistics, studies or reports concerning the autodialer or prerecorded messages that have been produced. Mot. at 14; Resp. at 14; Reply at 9-10; Transcript at 31-32.

14.    **Legal Advice**: TBI revealed for the first time on December 10, 2009, that attorney David M. Schultz, counsel for defendant in this action, provided legal advice to the defendant regarding prerecorded messages before this action was filed. TBI has taken the unsupportable position that these emails and other materials are "not discoverable" because

they contain legal advice. A party is required, under Fed.R.Civ.P. 26(b)(5), to disclose materials for which it claims privilege, and to produce a privilege log. The result of failure to do so is waiver. *Hobley v. Burge*, 433 F.3d 946, 951 (7th Cir 2006). "Withholding documents without a proper notice of privilege is, to be sure, a violation of the Federal Rules-if the culprit is a party... or a nonparty who has received a subpoena. While we might understand an argument for sanctions against an attorney who has stonewalled, withheld information from the client without notice, or deliberately impeded the client's ability to fulfill discovery obligations, none of that was the case here." (internal citations omitted).

15.     Because these materials are related to legal compliance with respect to prerecorded messages, they are responsive to the same items identified with respect to the emails above. Mot. at 12-13; Resp. at 13-14; Pl. Reply at 7-8; Transcript at 26-28.

16.     These are only the items that plaintiff's counsel can tell are missing. Most likely there are more responsive materials that, like the emails, defendant has not mentioned because it does not think the Court's order meant what it said.

**Relief Requested**

17.     Plaintiff requests that this Court admonish TBI, and order it to, again, provide full and unequivocal responses to all of the discovery it compelled by the date suggested by TBI: January 4, 2010. In order to avoid the prolific equivocation that has occurred previously in this case, plaintiff requests that the Court order that the new responses look just like ordinary discovery responses, retyping the requests and responses, and include an affidavit of completeness as to both the interrogatories and the document requests. The responses should have no objections in them, and no documents or information should be withheld based upon

6

objection. Plaintiff also requests that the Court order TBI to pay all fees and costs associated with the entire motion to compel.

18.     Of course, full responses are what has already been ordered; not half responses or production of materials TBI thinks plaintiff needs. See mtn at 5-6. Other possible appropriate measures might be to strike TBI's "bona fide error" defense for the FDCPA claim arising out of TBI's failure to produce Exhibit B, which demonstrates that TBI knew that calling debtors' cell phones was likely a violation of 15 U.S.C. §1692f(5), and limiting defendant from arguing that it did not know about the TCPA based upon the same document.

19.     Plaintiff also requests that the Court warn that further failure to comply with the Court's order may result in further sanctions, and any other relief the Court deems proper.

WHEREFORE, plaintiff requests that the Court deny TBI's request for "clarification," order TBI to show cause why it has not complied with the Court's November 13, 2009 order, and issue appropriate sanctions.

Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TODD FIKE, on behalf of himself and others similarly situated, ) ) ) | |
| Plaintiffs, ) ) | |
| | ) **Case No. 09 C 2558** |
| v. ) ) | |
| | ) **JUDGE DOW** |
| THE BUREAUS, INC. ) ) | |
| | ) **MAGISTRATE JUDGE KEYS** |
| Defendant. ) ) | |

## DECLARATION OF MARIAN SANGALANG

Marian Sangalang has personal knowledge of and would testify to the following facts if she were called as a witness in this matter:

1. I am a citizen of the State of Illinois and over 21 years of age. I am employed by The Bureaus, Inc. ("TBI") as Director of Systems and Collection Technology.

2. TBI has produced to Todd Fike's counsel the manuals for its telephone dialing system, the acquisition contract for the system, and the contract for technical support related to the system.

3. TBI has conducted a diligent search for but not located any communications relating to the telephone dialing system's capability to produce numbers to be called using a random or sequential number generator. Based on my knowledge of the system and my review of the user manuals, I believe that the dialing system does not have such a capability.

4. TBI has conducted a diligent search for but not located any contracts or documents regarding the prerecorded message it uses in the collection of debts.

5. TBI has searched for but not located any contracts, emails or agreements concerning telephoning debtors to collect debts using an automatic telephone dialing system, prerecorded voice, or artificial voice message, other than the documents in TBI's document production. TBI is producing "FastFax" updates from the ACA International regarding *Foti* issues, which relate to messages left for debtors. The document that shows what numbers TBI includes in its dialing campaigns is labeled TBI 000031-48. In addition, TBI received written legal advice regarding *Foti* issues from David M. Schultz. That advice is non-discoverable under the attorney-client privilege.

6. TBI has reviewed its files concerning other lawsuits and informal complaints filed against TBI. No lawsuits or informal complains, other than this lawsuit, have alleged that TBI violated Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

7. TBI has no documents related to compliance with the TCPA other than the material already produced to Fike's counsel.

8. TBI has produced all documents related to its affirmative defense to Fike's claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k.

9. The phone numbers that TBI uses to place telephone calls were in service during the time periods indicated below:

| Number | Time Period Number in Service |
|---|---|
| 877-887-4824 | 4 years 11 months |
| 800-708-1301 | Greater than 20 years |
| 847-328-4300 | Greater than 20 years |
| 312-656-7478 | Greater than 5 years |
| 630-669-5097 | Greater than 5 years |

2

| 708-516-3679 | Greater than 5 years |
| --- | --- |

I certify under penalty of perjury under the laws of the United States of America that the

foregoing statements are true and correct, to the best of my knowledge and belief.

Marian Sangalang

12/8/09

Date

6512871v1 899402 56903

# Exhibit B

**From:** Sangalang, Marian [mburke@thebureaus.com]
**Sent:** Wednesday, July 09, 2008 7:03 PM
**To:** 'Sangalang, Aristotle'; 'Sorgatz, Bill'
**Subject:** FW: Autodialer Warning

Aris,

Out internal policy ███████████████████████████████████████████████████████████████

Marian Sangalang
The Bureaus, Inc.
Director of Systems and Collection Technology
Office-800-708-7071 ext. 1212
Cell-847-845-4302

---

**From:** ACA International [mailto:aca@acainternational.org]
**Sent:** Wednesday, July 09, 2008 5:16 PM
**To:** mburke@thebureaus.com
**Subject:** Autodialer Warning

ACA International
P.O. Box 390106
Minneapolis, MN 55439-0106
Main: +1 952.926.6547
Fax: +1 952.926.1624

Dear ACA Member,

This information is being sent to you at the request of the ACA International Executive Committee. All members using autodialers or prerecorded message technology to place calls to consumers are urged to review the following information.

The Telephone Consumer Protection Act of 1991 (TCPA) prohibits all parties from using an autodialer or prerecorded message to call a consumer's wireless telephone number without obtaining the prior express consent of the consumer to place such calls.

On January 4, 2008, the Federal Communications Commission (FCC) issued a declaratory ruling clarifying the permissibility of using an autodialer or prerecorded message to place calls to a consumer's wireless telephone number. In its ruling, the FCC clarified that an individual provides express consent to be called at her wireless number via autodialer or prerecorded message if she knowingly releases her wireless telephone number to the calling party. In particular, the FCC noted providing a wireless telephone number to a creditor, such as part of a credit application, would constitute prior express consent by the individual to be contacted at that number.

The viability of this declaratory ruling has recently been called into question. The Northern District of California recently concluded the FCC exceeded its authority in issuing the January 4, 2008 declaratory ruling.

In the California case, the creditor used an autodialer to place calls to the consumer's wireless telephone number. The creditor contended such calls were permissible because the consumer provided her wireless telephone number in a credit application and in other correspondence with the creditor, and therefore, the creditor had the consumer's prior express consent to use an autodialer to call the consumer's wireless number.

The court disagreed, finding the consumer did not provide express consent to receive autodialed or prerecorded message calls by listing her telephone number in a credit application and in other correspondence with the creditor. The court asserted to qualify as "prior express consent," the consumer must knowingly provide her wireless number for the specific purpose of receiving autodialed or prerecorded message calls.

The court found the FCC's interpretation of the phrase "prior express consent" was both "manifestly contrary to the statute" and unreasonable because it "impermissibly amends the TCPA to provide an exception for 'prior express or implied consent' and flies in the face of Congress' intent."

Since the consumer did not release her wireless number for the specific purpose of receiving autodialed calls via her wireless telephone, the court concluded the creditor had not obtained the requisite prior express consent required under the TCPA to place calls to the consumer's wireless number via an autodialer. Accordingly, the court granted summary judgment in favor of the plaintiff.

CONFIDENTIAL                    TBI000729

Additional suits have been filed alleging similar violations. ACA is working with defense counsel to coordinate a nationwide effort on how to approach the court's ruling in future TCPA-related litigation.

ACA members currently using an autodialer to place calls to consumers are strongly urged to consult with their legal counsel to determine how this decision affects their current use of autodialers. For additional information on this topic or assistance in locating an attorney, please contact ACA's Compliance Department at +1(952) 928-6547 or e-mail compliance@acainternational.org.

Best regards,

Rozanne M. Andersen, CAE
Executive Vice President/General Counsel

ACA International
4040 West 70th Street
Minneapolis, MN 55435
+1 (952) 926-6547
www.acainternational.org

This e-mail has been sent to mburke@thebureaus.com.

You have received this e-mail as a courtesy of ACA International. If you wish not to receive **Informational E-mails** (IMPORTANT: See what type of e-mails you will be unsubscribing from) in the future, please follow this URL to unsubscribe: http://www.acainternational.org/?cid=9889&mem=3053570&cat=3. If you are not able to click on the URL, copy and paste it into the address bar of your browser to unsubscribe. You may also e-mail us at optout@acainternational.org to unsubscribe. Please make sure to provide us with your name and e-mail address. If you are a member of ACA International, please log in and go to your member profile where you can edit your e-mail preferences.

© 2008 ACA International. All Rights Reserved. Materials may not be reproduced without written permission. ACA International, the Association of Credit and Collection Professionals, is the comprehensive, knowledge-based resource for success in the credit and collection industry. Founded in 1939, ACA brings together more than 5,500 members worldwide, including third-party collection agencies, attorneys, creditors and vendor affiliates. The association establishes ethical standards, produces a wide variety of products, services and publications, and articulates the value of the credit and collection industry to businesses, policymakers and consumers. For more information about ACA International, visit http://www.acainternational.org.

**From:** Sangalang, Marian [mburke@thebureaus.com]
**Sent:** Wednesday, July 09, 2008 6:40 PM
**To:** 'Brown, Nikki'; 'Desauliniers, Suzanne'; jhedges@thebureaus.com
**Cc:** pherrera@thebureaus.com; 'Sangalang, Aristotle'
**Subject:** FW: Autodialer Warning

**Importance:** High

Please give this to your staff immediately and make certain ███████████████
████████████████████████████

Thanks,

Marian Sangalang
The Bureaus, Inc.
Director of Systems and Collection Technology
Office-800-708-7071 ext. 1212
Cell-847-845-4302

---

**From:** ACA International [mailto:aca@acainternational.org]
**Sent:** Wednesday, July 09, 2008 5:16 PM
**To:** mburke@thebureaus.com
**Subject:** Autodialer Warning



ACA International
P.O. Box 390106
Minneapolis, MN 55439-0106
Main: +1 952.926.6547
Fax: +1 952.926.1624

Dear ACA Member,

This information is being sent to you at the request of the ACA International Executive Committee. All members using autodialers or prerecorded message technology to place calls to consumers are urged to review the following information.

The Telephone Consumer Protection Act of 1991 (TCPA) prohibits all parties from using an autodialer or prerecorded message to call a consumer's wireless telephone number without obtaining the prior express consent of the consumer to place such calls.

On January 4, 2008, the Federal Communications Commission (FCC) issued a declaratory ruling clarifying the permissibility of using an autodialer or prerecorded message to place calls to a consumer's wireless telephone number. In its ruling, the FCC clarified that an individual provides express consent to be called at her wireless number via autodialer or prerecorded message if she knowingly releases her wireless telephone number to the calling party. In particular, the FCC noted providing a wireless telephone number to a creditor, such as part of a credit application, would constitute prior express consent by the individual to be contacted at that number.

The viability of this declaratory ruling has recently been called into question. The Northern District of California recently concluded the FCC exceeded its authority in issuing the January 4, 2008 declaratory ruling.

In the California case, the creditor used an autodialer to place calls to the consumer's wireless telephone number. The creditor contended such calls were permissible because the consumer provided her wireless telephone number in a credit application and in other correspondence with the creditor, and therefore, the creditor had the consumer's prior express consent to use an autodialer to call the consumer's wireless number.

The consumer disagreed, finding the consumer did not provide express consent to receive autodialed or prerecorded message calls by listing her telephone number in a credit application and in other correspondence with the creditor. The court asserted to qualify as "prior express consent," the consumer must knowingly provide her wireless number for the specific purpose of receiving autodialed or prerecorded message calls.

The court found the FCC's interpretation of the phrase "prior express consent" was both "manifestly contrary to the statute" and unreasonable because it "impermissibly amends the TCPA to provide an exception for 'prior express or implied consent' and flies in the face of Congress' intent."

CONFIDENTIAL TBI000731

Since the consumer did not release her wireless number for the specific purpose of receiving autodialed calls via her wireless telephone, the court concluded the creditor had not obtained the requisite prior express consent required under the TCPA to place calls to the consumer's wireless number via an autodialer. Accordingly, the court granted summary judgment in favor of the plaintiff.

Additional suits have been filed alleging similar violations. ACA is working with defense counsel to coordinate a nationwide effort on how to approach the court's ruling in future TCPA-related litigation.

ACA members currently using an autodialer to place calls to consumers are strongly urged to consult with their legal counsel to determine how this decision affects their current use of autodialers. For additional information on this topic or assistance in locating an attorney, please contact ACA's Compliance Department at +1(952) 928-6547 or e-mail compliance@acainternational.org.

Best regards,

*Rozanne M. Andersen*

Rozanne M. Andersen, CAE
Executive Vice President/General Counsel

ACA International
4040 West 70th Street
Minneapolis, MN 55435
+1 (952) 926-6547
www.acainternational.org

This e-mail has been sent to mburke@thebureaus.com.

You have received this e-mail as a courtesy of ACA International. If you wish not to receive **Informational E-mails** (IMPORTANT: See what type of e-mails you will be unsubscribing from) in the future, please follow this URL to unsubscribe: http://www.acainternational.org/?cid=9889&mem=3053570&cat=3. If you are not able to click on the URL, copy and paste it into the address bar of your browser to unsubscribe. You may also e-mail us at optout@acainternational.org to unsubscribe. Please make sure to provide us with your name and e-mail address. If you are a member of ACA International, please log in and go to your member profile where you can edit your e-mail preferences.

© 2008 ACA International. All Rights Reserved. Materials may not be reproduced without written permission. ACA International, the Association of Credit and Collection Professionals, is the comprehensive, knowledge-based resource for success in the credit and collection industry. Founded in 1939, ACA brings together more than 5,500 members worldwide, including third-party collection agencies, attorneys, creditors and vendor affiliates. The association establishes ethical standards, produces a wide variety of products, services and publications, and articulates the value of the credit and collection industry to businesses, policymakers and consumers. For more information about ACA International, visit http://www.acainternational.org.

**From:** Marian Burke [mburke@thebureaus.com]
**Sent:** Tuesday, April 19, 2005 11:06 AM
**To:** 'Dennis Albano'; 'Suzanne Desaulniers'; 'Sue Mierop'; jhedges@thebureaus.com
**Cc:** 'Aristotle Sangalang'; jjanousek@thebureaus.com
**Subject:** aca information about cell phone calls

**Please share this with your staff.** ███████████████████████████
████████████████████████████████████████████████████████
████████████████████ **the FDCPA states it is unfair and unconscionable
collection practices to cause a consumer to incur charges when we are calling
them. Read this article to get a full understanding. Please let me know if you
have questions.**

**Thanks,**

**Marian**


## March's Top Compliance Question: Can a Collector Contact a Consumer Via Cell Phone?

**Published: Friday, April 15, 2005**

The top compliance question received by ACA's compliance officers for March was, "Can a debt collector contact a consumer via the consumer's cellular telephone?" Section 808(5) of the FDCPA provides that a debt collector engages in unfair and unconscionable collection practices when she causes a consumer to incur charges for a communication if the true purpose of the call is concealed. Concern is raised here because many cellular plans charge consumers by the minute. In order to avoid a violation of this subsection, it is necessary that a debt collector provide meaningful disclosure of her identity as well as the true purpose of the communication when attempting to collect a debt.

There are additional considerations when contacting a consumer via the consumer's wireless phone. According to Section 805 (a)(1) of the FDCPA, a debt collector may communicate with a consumer between the hours of 8 a.m. and 9 p.m., local time at the consumer's location. When calling a cellular phone, one can never be certain of the consumer's exact location. Debt collectors may call at the wrong time or into a state in which the collector is not licensed to collect. These problems are not easily solved.

Aside from FDCPA concerns, the Telephone Consumer Protection Act (TCPA) regulations prohibit any person or entity from using an automated dialing and announcing device to initiate a telephone call to any number assigned to a wireless telephone unless the prior express consent of the called party is obtained.

This article is provided by ACA International's Legal and Government Affairs Department.