**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TODD FIKE, on behalf of himself and others | ) | |
| similarly situated, | ) | 1:09-cv-2558 |
|     Plaintiffs, | ) | |
| | ) | Judge Dow |
|         v. | ) | Magistrate Judge Keys |
| | ) | Jury Demanded |
| The Bureaus, Inc., | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ATTORNEY'S FEES
AND THE CLASS REPRESENTATIVE'S AWARD**

This memorandum is respectfully submitted in support of plaintiff's application for an award of $10,000, which is the maximum damages plaintiff could recover if he prevailed at trial, and attorney's fees and costs in the total amount of $200,000, which represents 25% of the settlement proceeds.[1]

The class was apprised of plaintiff's intention to request these amounts in the class notice, and no class member has indicated any objection to this application.  Defendant has indicated that it does not object to plaintiff's counsel's application for this amount in fees, and has not yet responded to written communications concerning whether it objects to an award of $10,000 for plaintiff Todd Fike.

Because no class member has objected, because defendant does not object, and for the reasons stated below, the application should be allowed in its entirety.

---

[1] Plaintiff anticipates filing a memorandum in support of final approval when data such as the number of claim forms is received from the class administrator.

1

## I. Background

This is a Telephone Consumer Protection Act, 47 U.S.C. §227(b) case against a local debt collection agency called The Bureaus, Inc. (hereinafter "TBI"). Plaintiff alleged that TBI violated the TCPA by calling plaintiff and others on their cellular telephones using allegedly illegal technology: an automatic telephone dialing system, and prerecorded voice messages.[2]

The parties hotly litigated the case for about one year. Most of the litigation concerned class discovery, and discovery regarding affirmative defenses that TBI raised, including briefing in front of Magistrate Judge Keys on these issues, as well as a Fed.R.Civ.P. 72 objections that were extensively briefed. The parties began serious arms-length settlement talks in around January 2009, and participated in two protracted mediations conducted by Magistrate Judge Keys on January 29, 2010, and February 26, 2010. Defendant's insurance company flew a representative in to participate in the second settlement conference, in-person.

The parties reached a common fund settlement of $800,000 in February 2010. This amount represents 80% of the $1,000,000 of TBI's total insurance policy limit. However, because of the vigorous litigation that occurred before the settlement, and because the insurance limit is depleted through defense counsel's costs and fees, the $800,000 settlement represented 95% of the total insurance proceeds available at the time of the settlement.

This is the first TCPA autodialer-to-cell phone class action settlement in the country, where class members received notice by first class mail. The only other settlement in this type of case, ever, was *Bellows v. NCO Financial Systems, Inc.*, No. 3:07-CV-01413-W-AJB , 2008 WL

---

[2] Plaintiff also had a Fair Debt Collection Practices Act claim arising out of TBI's alleged manipulation of caller identification to "trick" consumers into thinking someone other than TBI was calling. This claim was originally brought as a class claim, but was settled on an individual basis as part of this class settlement.

5458986 (S.D.Cal. Dec. 10, 2008). However, the *Bellows* settlement, which could be termed a "sweetheart" settlement, did not obtain nearly the substantive relief this case has. Indeed, although settlement fund in the *Bellows* case was initially larger, $950,000, the defendant debt collection agency received a substantial reverter. The plaintiff's attorney in that case received $300,000. The notice plan that included only publication notice twice in the USA Today, plus a settlement website that was not advertised, which was probably sufficient to satisfy Due Process, but not sufficient to actually notify class members of the case, or their claims. Indeed, there were only twenty-three claim forms filed. Id. at ¶H. This settlement compares favorably to that settlement in all material respects.

All class members were sent the notice approved by this Court through United States Mail. There have been no objections to any part of this settlement. For the reasons stated below, the Court should finally approve the settlement.

## II. THE COURT SHOULD APPROVE THE REQUESTED COMPENSATION TO PLAINTIFF

Class Counsel requests that the Court approve class representative Todd Fike an award of $10,000. This amount is not a class "incentive" award, but reflects the amount that Mr. Fike sought in the underlying litigation. The amount is calculated by taking the six allegedly impermissible calls to Mr. Fike's cell phone by TBI, multiplied by the $1,500 in TCPA damages per call, permitted by 47 U.S.C. §227(b)(3), which totals is $9,000. The settlement also provides that Mr. Fike may recover for his individual FDCPA claim, the maximum damages for which is $1,000.

Although certain jurisprudence may limit so-called "incentive" awards that class representatives may take from settlements, class counsel is not aware of any cases holding that

3

the class representative must limit his recovery to that which the class members will receive. In other words, Mr. Fike should not be penalized for his participation by receiving less than he might have received if he had pursued the case on an individual basis.

Further, although Mr. Fike's proposed $10,000 recovery was clearly indicated in the class notice, no class member has objected to this amount.

Indeed, plaintiff's position on this point is supported by the fact that courts have often approved "service" or "incentive" awards *in excess* of the plaintiff's maximum possible recovery, on the basis that named plaintiffs in class actions take risks and perform services for the benefit of the class. *See* Albert Conte and Herbert B. Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.). The service/incentive award doctrine is justified, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." *In re Cont'l*, 962 F.2d 571.

Since *In re Cont'l*, service awards for named plaintiffs in class actions have been regularly granted and upheld in this Circuit. *See Cook,* 142 F.3d 1016 (7th Cir. 1998). The named plaintiff here invested time and energy working with counsel, responding to voluminous discovery requests (including obtaining records from third parties) assisting counsel in understanding the nature of defendant's conduct, and carried to their potential detriment and the benefit of the class the substantial risk of non-recovery.

Thus, because plaintiff should not be required to forgo recovery he would have been able to receive if he had prevailed, because of his willingness to represent the class and for his

ultimately fruitful efforts on behalf of the class, Todd Fike should be awarded the full amount of his requested recovery of $10,000.

### III. The Fees and Costs Requested Should be Approved.

Plaintiff's counsel in this case seeks 25% of the gross Settlement Fund, or $200,000, in attorney's fees in this case. This amount is patently reasonable in comparison with other cases from this Circuit and around the country, and when performing a lodestar cross-check.

### A. The Proposed Twenty-Five Percent of the Settlement in this case is on the Low End of Fee Awards Typically Approved in Common Fund Class Settlements.

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Gaskill v. Gordon,* 160 F.3d 361, 362 (7th Cir. 1998); *Florin v. Nationsbank, N.A.,* 34 F.3d 560, 566 (7th Cir. 1994); *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) *("Cont'l I"); In re Cont'l Ill. Sec. Litig.,* 985 F.2d 867, 868 (7th Cir. 1993); *Kendrick v. Atcor, Inc.,* 1988 U.S. Dist. LEXIS 8389 (N.D. Ill. 1988). In *Taubenfeld v. Aon Corp.,* 415 F.3d 597 (7th Cir. 2005), the Seventh Circuit provided guidance for the award of attorneys' fees in a securities class action:

> "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Although it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante,* courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions.

*Id.* at 599 (citation omitted).

For example, in affirming an award of fees equaling 30% of the $7.25 million settlement fund plus expenses, the *Aon* court considered, among other things, the following factors: (1) "awards made by courts in other class actions" which "amount[ed] to 30-39% of the settlement fund"; (2) "the quality of legal services rendered"; and (3) "the contingent nature of the case." *Id.* at 600. In considering a fee request, the court must do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001).

"The decision of whether to use a percentage method remains in the discretion of the district court." *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 975 (7th Cir. 1991).  However, Class Counsel recognizes that "'[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class, 'particularly where that percentage of the benefit approach replicates the market." *Cooper v. IBM Pers. Pension Plan,* No. 99-829, 2005 WL 1981501, at *3 (S.D. Ill. Aug. 16, 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *See Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).  Plaintiff Fike's fee agreement with class counsel calls for a one-third, two-thirds division, after costs, and class counsel's current practice is to request 40% for TCPA cases. Appendix A.  This percentage reflects that TCPA cases are not fee-shifting, and that an attorney that agrees to litigate such a case takes a substantial risk of time and resources in doing so.

6

In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F.2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998). If this case were an individual case, the customary fee arrangement would be contingent, on the percentage basis, and in the range of 331/3% to 40% of the recovery. *See Kirchoff* at 323 (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Limited Partnership v. Price Waterhouse, LLP,* 2001 WL 1568856 at *4 (N.D. Ill 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding class counsel the requested one-third of the common fund); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40– 41 (N.D. Ill. Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed upon vary, with one-third being particularly common."); *In re Prudential-Bache Energy Income P'ships Sec. Litig.,* MDL No. 888, 1994 U.S. Dist. LEXIS 6621, at *4 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases."); *In re Shell Oil Refinery,* 155 F.R.D. 552, 571 (E.D. La. 1993) ("The customary contingency fee is between 33 1/3% and 40%.").

Additionally, "[T]here are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin,* 34 F.3d at 566. The percentage method is bereft of largely judgmental and time-wasting computations of lodestars

and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation. *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Cont'l I,* 962 F.2d at 573 (noting that it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon,* 942 F. Supp. 382, 386 (N.D. Ill. 1996).

It has been noted that "the Seventh Circuit strongly endorsed the percentage method of computing appropriate fee awards in class action common fund cases." *See Goldsmith v. Tech. Solutions Co.,* 1995 U.S. Dist. LEXIS 15093, *24 (N.D. Ill. 1995) (other citations omitted) (approving 33.33% fee award), *citing In the Matter of Cont'l Ill. Sec. Litig.,* 985F.2d 867 (7th Cir. 1993). Judges in this District has also recognized that a fee award of "33 1/3% is in fact in line with that which has, in previous cases, been approved," and "[t]hirty three percent appears to be in  ine with what attorneys are able to command on the open market in arm's length negotiations with their clients." *Id.* at 26–27.

Notably, in *In re Abbott Laboratories Securities litigation,* 1995 WL 792083, *1 and *11 (N.D. Ill. July 3, 1995) Judge Aspen recognized the appropriateness of a fee of nearly 1/3 of the common fund in complex litigation and the historic approval of such fees in the 7th Circuit. See *also In re Lithotripsy Antitrust Litig.,* 2000 U.S.Dist. LEXIS 8143, **6-7 (N.D. Ill. June 12, 2000) ("33.3% of the fund plus expenses is well within the generally accepted range of the attorneys' fee awards in class-action anti-trust lawsuits."); *In re Spyglass, Inc. Sec. Litig.,* No. 99-c-5 12 (N.D. Ill. March 24, 2000) and *In re Spyglass, Inc. Sec. Litig.,* No. 99-cv-0512 (N.D. Ill. May 31,

2000) (33% fee award approved); *Rehm v. Eagel Fin. Corp.,* 1998 U.S. Dist. LEXIS 20015 (N.D. Ill. Dec. 8, 1998) (approving 33.3% fee request), *aff'd Rehm v. EagelFin. Corp.,* No. 96-2455 (N.D. Ill. Dec. 8, 1998) ("the 7th Circuit Court of Appeals, as well as the majority of other circuit courts have approved the use of the percentage of the fund method to award attorneys' fees in class action/common fund cases"); *see also Taubenfeld v. Aon Corp.*, 415 F.3d 597,598, 600 (7th Cir. 2005) (affirming fee award of 33.3%).

The requested one-quarter fee award here also comports favorably with similar fees awarded by district courts in class actions in other circuits. *See, e.g.*, *In re Marsh ERISA litigation,* 2010 WL 451028 (S.D. N.Y. Jan. 29, 2010) ("The requested fee of $11,665,500 represents one-third of the recovery and about 87.6% of the lodestar. It is fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere."); *In Re Marine Hose Antitrust Litigation,* Jan. 13, 2010, 07-cv-21613 (Master Docket No. 08-MDL-1888 S.D. Fla.) (found "that the percentage of the fund methods is appropriate for calculating attorneys' fees . . ." and awarded 33% (the amount requested) of the principal amount the Settlement Fund and accrued interest.); *cf. Gaskill,* 942 F. Supp. at 388 (N.D. Ill.) (38% award); see Appendix B, chart of securities cases awarding 1/3 of common fund settlements.

### B. Performing a Cross-Check with Class Counsel's Lodestar Supports Approval.

Performing a cross-check with plaintiff's lodestar fees also supports approval of the application. In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, i.e., the "market price." *McDonald v. Armontrout*, 860 F. 2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market

rates — they provide an efficient and fair short-cut for determining the market rate'*"); Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532 (D. Minn. Dec. 30, 1986) ("compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); L*indy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F. 2d 161, 167 (3rd Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate.").

As explained in the Declaration of Alexander H. Burke, counsel has spent 367.75 hours litigating this case and administering the settlement for a lodestar of $125,035.  Appendix A. Further, Lucia Bertone-Ledford, the firm's law clerk, spent 21.1 hours working on answering and responding to class members' calls, for a total of $2,532.  Plaintiff's counsel's hourly rate of $340 is commensurate with that which is charged in Chicago by consumer rights attorneys. *Demitro v. General Motors Acceptance Corp.,* 388 Ill.App.3d 15, 902 N.E.2d 1163 (1st Dist. 2009).

Mr. Burke has been approved at hourly rates up to $288, when he was an associate, before he opened Burke Law Offices, LLC in September 2008.  Appendix A.  It is manifest that hourly rates for the owner of a law firm that takes cases on a contingency fee basis should be substantially higher than those of associates who take no such risk. Further, Mr. Burke has two years of experience under his belt since the latest of those approvals, including substantial experience litigating class TCPA suits like this one; suits that only a few other attorneys are attempting, nationwide. For these reasons, and for the reasons explained below, plaintiff's hourly rate of $340 is reasonable and appropriate in the Chicago marketplace for consumer cases.

Surveys are often used to assist in determining the rates charged by the firm, counsel consulted surveys of rates charged by other local law firms. Such surveys have been relied upon by courts in determining the market rate for similar services and awarding fees. *Vyshllevska v. Park Ridge Oldsmobile*, No. 02-C6173, 2003 U.S. Dist. LEXIS 11222, *6 (N.D.Ill. June 30, 2003)("[s]urveys are often used in determining the market rate for statutes which require the payment of 'reasonable attorneys fees.'"); E.g., *FDIC v. Morris, 1992* U.S. Dist. LEXIS 9439 (N.D. Ill., June 29, 1992); Allian*ce to End Repression v. City of Chicago*, 1993 U.S. Dist. LEXIS 1972 (N.D. Ill. Feb. 22, 1993).

According to a 2007 study performed by The National Law Journal, non-contingent partner rates were as high as $1,000.00 per hour for certain partners in Greenberg Traurig. In Chicago, the highest partner rate reported was $900.00 per hour at Jenner & Block and $845 at Winston & Strawn. The median rate for partners at Chicago law firms varied from $425.00-$640.00 per hour. In addition, the highest rate for associates was $590.00 at Winston & Strawn, with median rates ranging from $250.00-$395.00, with the lowest rate at $180.00. See *A Nationwide Sampling of Law Firm Billing Rates*, The Nat'l L.J. (Dec. 10, 2007) attached as Appendix C. As can be seen from the survey, counsel's hourly rate is well under the senior associates rate at these firms. Id.

In addition to the court orders and surveys, plaintiff has attached affidavits from other cases to support this fee petition. See Appendices D-F. Plaintiff has attached affidavits from consumer lawyers James Shedden and Lance Raphael supporting the current rates and fees charged in this case as well as the affidavit of Michael B. Hyman showing Much Shelist, billed its associates in consumer cases, who were 3 years out of law school, at the rate of $285 per hour

11

in 2004. See Hyman Affidavit attached as Appendix D. The First District found these three lawyers to be experienced and reputable litigators in the area of consumer fraud litigation and sufficient to support plaintiff's rates and time in that case. *Demitro v. General Motors Acceptance Corp.,* 388 Ill.App.3d 15, 902 N.E.2d 1163 (1st Dist. 2009).

James Shedden is a director of Schad, Diamond & Shedden, P.C., which is a consumer law firm. Mr. Shedden received his J.D. from the University of Illinois in 1982, and his B.A. from the University of Illinois at Chicago in 1973. Mr. Shedden has successfully litigated many consumer cases and currently charges $600.00 an hour for consumer litigation. He is a member of the Chicago, Illinois State and American Bar Associations, and is a founding member of the National Association of Consumer Advocates (NACA). As a trial lawyer, Mr. Shedden is admitted to the state bar of Illinois, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Seventh Circuit.

As attested to in his affidavit, Mr. Shedden's 2008 affidavit was based on his familiarity with Mr. Burke's work while at another law firm, and his personal knowledge of Mr. Burke's legal abilities. Appendix E, ¶7.

As testified to by Mr. Shedden, in taking on consumer cases and setting the rates, he looks to the risk of nonpayment, the time delay in payment in contingency cases, the risk that as the case progresses the facts will develop differently from, or in addition to, the facts of which we were first advised, the risk that the law will change before the case is resolved, or that after the case is resolved, an appellate court will issue an opinion either stating new principles of law adverse to the plaintiff, or reverse earlier opinions favorable to the plaintiff, or apply controlling legal principles in a manner he did not anticipate.

An important factor in deciding whether to take a fee-shifting case where damages are low in relation to the time and effort necessary to prosecute the case - which, in most cases, is the fact - is whether his firm believes the courts are adequately awarding attorneys fees to successful plaintiff lawyers in those cases. If they determine that the courts are hostile to awarding fees in certain types of statutory fee-shifting cases, and will reduce the successful plaintiffs attorneys fee award because only a small recovery is obtained for the plaintiff, they decline to take such cases.

Of course, the instant case is not fee- shifting, so the risks and potential benefits were even smaller. Indeed, in this case, had class certification been denied, the case would have been worth less than $9,000 plus costs.

Lance Raphael is an attorney licensed to practice law in Illinois since 1993. He is the founder of the Chicago based law firm of the Consumer Advocacy Center, PC, which focuses on consumer cases. He charged $550.00 per hour for consumer cases in 2008. He has extensive experience in consumer litigation and attested that rates similar to those that are being requested herein were within the range of the marketplace, even in 2008. See Appendix F ¶ 6.

Plaintiffs' counsels' affidavits as well as the attached affidavits more than adequately support the rates requested in this case.

### C. Plaintiffs Have Established the Requested Rates

Once a party "submits credible evidence in support of its Petition for Costs and Fees, the Court will not arbitrarily reduce the number of hours awarded for [their] work on this case." *Krumwiede v. Brighton Assocs.*, 2006 U.S. Dist. LEXIS 60654 (N.D. Ill. 2006). In a percentage of the fund case, a lodestar cross-check is only "a cross-check and a not a full lodestar analysis." *In*

*re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *15 (E.D.Pa. June 2, 2004). To delve deeply into the numerous hours claimed by plaintiff's attorney in this matter would undermine the Court's reliance on the percentage-of-recovery method. *Victor v. Argent Classic Convertible Arbitrage Fund L.P,* --- F.3d ----, 2010 WL 4008744 (2d Cir. Oct. 14, 2010) (affirming fee award of 21.4% of settlement proceeds, multiplier of 2.89, for total of $52.4 million); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir.1995) ("The court may however, as a check, want to use the lodestar method to assure that the precise percentage awarded does not create an unreasonable hourly fee.").

Finally, class counsel's request for 25% of the common fund covers litigation expenses as well as fees which is unusual in a common fund award. Typically, class counsel seeks the payment of litigation expenses over and above a percentage award for attorneys' fees. Here, again, taking a more conservative approach than is required under this Circuit's precedent, Class Counsel proposes to absorb the expenses of litigation as a part of the 25% common fund fee award requested. *See Great Neck Capital v. PriceWaterhouseCoopers*, 212 F.R.D. 400, 412 (E.D.Wis. 2002) ("The paying arms length market typically reimburses lawyers for expenses . . .") *citing In re Synthroid*, 264 F.3d 722; *Spicer*, 844 F. Supp. at 1256 (granting expenses award). Class counsel's expenses in this case were $468.16. Appendix A.

Based on the foregoing, the Court should grant Class Plaintiffs' request for attorneys' fees (inclusive of expenses) in the amount $200,000 or 25% of the gross Settlement Fund.

## V. CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that this Court approve plaintiff's request for $10,000, the amount Mr. Fike would recover if he prevailed at trial.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Appendix A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TODD FIKE, on behalf of himself and others | ) |
| similarly situated, | )     1:09-cv-2558 |
|     Plaintiffs, | ) |
| | )     Judge Dow |
|     v. | )     Magistrate Judge Keys |
| | )     Jury Demanded |
| The Bureaus, Inc., | ) |
|     Defendant. | ) |
| | ) |

## DECLARATION OF ALEXANDER H. BURKE

I am Alexander H. Burke, manager of Burke Law Offices, LLC.

In September 2008, I opened Burke Law Offices, LLC. This firm concentrates on consumer class action and consumer work on the plaintiff side. Since the firm began, it has prosecuted cases for consumers under the Fair Debt Collection Practices Act, Fair Credit Reporting Act, Equal Credit Opportunity Act, Illinois Consumer Fraud Act, Truth in Lending Act and the Fair Labor Standards Act, among others. The firm also occasionally accepts mortgage foreclosure defense or credit card defense case. Except for debt collection defense cases, the firm works almost exclusively on a contingency basis.

My legal career began at Edelman, Combs, Latturner & Goodwin, LLC, in Chicago, Illinois, where I spent nearly three years litigating exclusively consumer cases. I estimate that approximately sixty-five percent of those cases were class actions. In 2007, I joined the Law Offices of Keith J. Keogh, Ltd., another consumer rights law firm, where my practice was again limited almost exclusively to consumer class action.

I make substantial efforts to remain current on the law, including class action issues. I attended the National Consumer Law Center Consumer Rights Litigation Conference in 2006, 2007, 2008 and 2009, and was an active participant in the Consumer Class Action Intensive Symposium at each of those conferences. In October 2009, I spoke on a panel of consumer class action attorneys welcoming newcomers to the conference. In addition to regularly attending Chicago Bar Association meetings and events, I am the vice-chair of the Chicago Bar Association's consumer protection section, and in November 2009, I moderated a panel of judges and attorneys discussing recent events and decisions concerning arbitration of consumer claims and class action bans in consumer contracts.

Some notable class actions that I have worked on include:

*Greene v. DirecTV, Inc.,* 2010 WL 1506730 (N.D.Ill. April 14, 2010) (motion to dismiss denied as to class TCPA and FCRA claims); *Donnelly v. NCO Financial Systems, Inc.,* 263 F.R.D. 500 (N.D.Ill. Dec. 16, 2009) Fed.R.Civ.P. 72 objections overruled in toto, --- F.Supp.2d ----, 2010 WL 308975 (N.D.Ill. Jan 13, 2010) (novel class action and TCPA discovery issues decided favorably to class); *Cicilline v. Jewel Food Stores, Inc.,* 542 F.Supp.2d 831 (N.D.Ill. 2008) (FCRA class certification granted); 542 F.Supp.2d 842 (N.D.Ill. 2008) (plaintiffs' motion for judgment on pleadings granted); *Harris v. Best Buy Co.,* 07 C 2559, 2008 U.S. Dist. LEXIS 22166 (N.D.Ill. March 20, 2008) (Class certification granted); *Matthews v. United Retail, Inc.,* 248 F.R.D. 210 (N.D.Ill. 2008) (FCRA class certification granted); *Redmon v. Uncle Julio's, Inc.,* 249 F.R.D. 290 (N.D.Ill. 2008) (FCRA class certification granted); *Harris v. Circuit City Stores, Inc.,* 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7,2008) (FCRA class certification granted); aff'd upon objection (Mar. 28, 2008); *Harris v. Wal-Mart Stores, Inc.,* 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. Oct. 10, 2007) (motion to dismiss in putative class action denied); *Barnes v. FleetBoston Fin. Corp.,* C.A. No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D.Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement, and resulting in a $12.5 million settlement for Massachusetts consumers); *Longo v. Law Offices of Gerald E. Moore & Assocs.,* P.C., 04 C 5759, 2006 U.S. Dist. LEXIS 19624 (N.D.Ill. March 30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.,* case nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037 (N.D.Ill. March 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Services, L.P.,* case No. 2:03 cv 498, 226 F.R.D. 328 (N.D.Ind. 2004) (compelling discovery), 226 F.R.D. 337 (N.D.Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.,* case nos. 03 C 5811, 03 C 6186, 2005 WL 1323364 (N.D. Ill. May 5, 2006) (Report and Recommendation granting class certification), aff'd, 2006 WL 1647531 (June 5, 2006); *Rawson v. Credigy Receivables, Inc.,* case no. 05 C 6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in class case against debt collector for suing on time-barred debts).

I graduated from Colgate University in 1997 (B.A. International Relations), and from Loyola University Chicago School of Law in 2003 (J.D.). During law school I served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. I also served as an extern for the United States Attorney for the Northern District of Illinois and was a research assistant to adjunct professor Honorable Michael J. Howlett, Jr.

I was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. My published work includes International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing, 14 Loy. Consumer L. Rev. 125 (2002).

I became licensed to practice law in the State of Illinois in 2003, and am a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana and Southern District of Indiana. In 2009-10, I was the Vice-Chair for the Chicago Bar Association consumer protection committee, and I am

currently the Chair for the committee. I am also a member of the Illinois State Bar Association, the Seventh Circuit Bar Association and the American Bar Association, as well as the National Association of Consumer Advocates.

Burke Law Offices, LLC charges its hourly clients $340 per hour; this rate has recently been raised from $315 per hour. The firm took the *Fike v. The Bureaus, Inc.*, 09-cv-2558, on a contingency basis, and the contract with Mr. Fike states that the firm will take one-third of Mr. Fike's recovery, although the firm's agreements with other clients for TCPA cases often calls for a 40/60 split.

In my experience, $340 is also consistent with what the market will bear for consumer protection legal services from a one-attorney law firm that specializes in this area.

In addition to being below what I believe the market will support $335 per hour is commensurate with hourly rates that other judges have approved for my work in the past. Each of the following court orders were entered before while I was an associate at previous law firms:

- In *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122 (N.D.Ill. Sept. 16, 2009), Judge Dow approved my hourly rate at $285 per hour while I was an associate, and approved $340 for Keith J. Keogh, the law firm owner, in a memorandum opinion arising out of a contested fee petition. Although the total fee award was reduced, hourly rates were not reduced.

- In *Pacer v. Rockenbach Chevrolet*, 1:07-cv-5173, ¶4(c) (N.D.Ill January 15, 2009), Judge Cole approved an hourly rate of $288 for me while I was an associate at another firm, and approved $340 for the law firm owner, Keith J. Keogh. Exhibit 1.

- In *Harper v. CCC Motors, Inc*, 06 M1 131521, Circuit Court of Cook County, Illinois, (Jan. 22, 2008), the court found in a consumer fraud case that $325 for Keith J. Keogh, and $275 for me was reasonable. Exhibit 2.

- Rates of $300 per hour for Mr. Keogh and $270 for his associate were approved by the Illinois Appellate Court in *Demitro v. General Motors Acceptance Corp.*, 388 Ill.App.3d 15, 902 N.E.2d 1163 (1st Dist.2009). Although I was not working at Mr. Keogh's firm at the time of trial, and therefore my rates were not approved by the appellate court, I replaced the associate in that case and drafted the briefs on appeal in that case.

- Similar rates were approved after trial in *Forbes v. E&I Funding*, 04 CH 07429 (Circuit Court of Cook County, Judge Agran). That trial resulted in a $190,000.00 verdict for plaintiff and $44,858.50 in attorney's fees in a mortgage broker fraud case. The rates in *Forbes* were approved at $325 for Mr. Keogh and $275 for Mr. Burke. Exhibit 3.

This firm hired a law clerk, Lucia Bertone-Ledford, in June 2010. Ms. Bertone-Ledford is now a second year law student at Loyola University Chicago School of Law. Ms. Bertone-Ledford worked at the Massachusetts Office of Consumer Affairs and Business Regulations in 2006-2007, answering inquiries about consumer laws and arbitration. She used this experience in assisting with fielding class member calls in this case. I believe that a reasonable rate for a law clerk at this experience level for this kind of work is $120 per hour.

This firm has a policy and practice of keeping contemporaneous time records in six minute increments. The records are commemorated in a computer program that is designed to keep track of such data. According to those time records, I spent 367.75 hours working on this case, for a total lodestar of $125,035. According to Ms. Bertone-Ledford's time records she spent 21.1 hours working on this case, for a total lodestar of $2,532. In addition, the firm paid $468.16 in out-of-pocket expenses in association with prosecution of this case.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Chicago, Illinois
November 2, 2008

Alexander H. Burke

# Exhibit 1



## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

VERONA PACER,          )
       Plaintiff,      )   07 C 5173
                   )
v.               )   Magistrate Judge Mason
                   )
ROCKENBACH CHEVROLET    )
SALES, INC.,d/b/a ROCKENBACH   )   JURY DEMANDED
CHEVROLET MEGA STORE,      )
       Defendant.    )

### FINAL ORDER

This matter coming before the Court on the parties' request for final approval of a Class Settlement Agreement ("Agreement") between Verona Pacer ("Plaintiff") and defendant, Rockenbach Chevrolet Sales, Inc. ("Defendant"), it is hereby ordered that:

1.    On October 26, 2008, the Court approved the Preliminary Settlement Agreement reached between Plaintiff Verona Pacer ("Plaintiff") and defendant, Rockenbach Chevrolet Sales, Inc. The Court approved a form of notice for mailing to the class. The Court is informed that actual notice was sent by first class mail to approximately 619 class members by First Class mail. A total of 53 envelopes were returned by the United States Postal Service, 4 of which were returned with forwarding addresses and re-mailed. One class members requested exclusion and no objections were timely filed or received.

2.    On January 14, 2009, the Court held a fairness hearing to which class members, including any with objections, were invited.

3.    The Court finds that provisions for notice to the class satisfy the requirements of Federal Rules of Civil Procedure 23 and due process.

4.    The Court finds the settlement is fair and reasonable and hereby approves the

Class Settlement Agreement submitted by the parties, including the Release and payment by defendant as follows:

      a.    defendant shall pay Verona Pacer $1,000 for settlement of her individual claim;

      b.    defendant shall mail a check for $125 to each of the Class Members who have not opted out and whose notice was not returned as undeliverable. The checks shall be valid for 90 days;

      c.    Plaintiffs' counsel has petitioned the court for attorney's fees and costs and expenses of this lawsuit in an amount of $20,000. The Court finds Mr. Keogh's 2008 hourly rate of $340.00 and Mr. Burke's hourly rate of $288.00 as reasonable and the time spent reasonable and necessary to prosecute this action. The Court awards attorney's fees and costs of $20,000.00 to Law Offices of Keith J. Keogh, Ltd. and finds this amount to be fair and reasonable. The attorney's fees and costs awarded by the court shall be paid by check within seven (7) days of the Effective Date.

      5.    Plaintiff and the members of the class that are set forth in *Exhibit A* hereto grant Defendant the following release: Plaintiff and each and every member of the Settlement Class, except the class member who opted out and the 49 class members who did not receive notice, including each and every one of their respective agents, representatives, attorneys, heirs, assigns or any other person acting on their behalf or for their benefit (collectively "Releasors") hereby release and discharge Defendant, as well as its predecessors and successors in interest, subsidiaries, insurers, officers, directors, agents, employees, members, shareholders, general partners, limited partners, beneficiaries, representatives, heirs, attorneys or assigns (collectively, "Releasees") from any causes

2

of action, suits, claims or demands whatsoever, in law or in equity, known or unknown at this time, which Plaintiff and the Settlement Class now have or ever had against the Releasees, or any of them, arising out of alleged violations of 15 U.S.C. § 1681c(g).

6.     The Court finds the Settlement Agreement fair and made in good faith.

7.     The Court holds that this Judgment bars the claims of Plaintiff and the class against Defendant and the Released Parties for claims released in paragraph 5 herein.

8.     Within thirty-five (35) days of this Order, Defendant shall file a notice ("Notice of Compliance") that Defendans have complied with the terms of the Agreement and all class members have been issued checks.

9.     The dismissal of this action will be converted to a dismissal with prejudice ten (10) days after the Notice of Compliance has been filed, absent a timely motion by Plaintiff or Defendant.

ENTERED: _____          DATE: January 15, 2009
              Honorable Jeffrey Cole

3

# Exhibit 2

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
_____ MUNICIPAL DISTRICT

_Harper_

v.

_CCC Motors, Inc_

LINE NO. _____

NO. _06 M1 61541_

### MOTION CALL ORDER

Present before the Court: ☐ Plaintiff(s) ☐ Defendant(s) ☒ Plaintiff(s)' Counsel ☒ Defendant(s)' Counsel

THIS MATTER having come before the Court, the Court having jurisdiction and being fully advised,

IT IS HEREBY ORDERED that the motion:

| | | |
|---|---|---|
| 4957 | ☐ to Vacate DWP of _____ | is GRANTED. |
| 5957 | ☐ | is DENIED. |
| 4957 | ☐ to Vacate Default Judgment of _____ | is GRANTED, |
| 4482 | ☐ and this case is set for Trial on _____, at ____ a.m./p.m. in Rm. ____ | |
| 4482 | ☐ for Status on _____, at ____ a.m./p.m. in Rm. ____ | |
| 5957 | ☐ to Vacate the Default Judgment of _____ | is DENIED. |
| 4957 | ☐ to Vacate the Dismissal of _____ | is GRANTED, |
| | and case is reinstated; Judgment for _____ | |
| 4001 | ☐ in the amount of $ _____ . | |
| ⟨ | ☐ to Vacate Installment Order of _____ | is GRANTED, Judgment to stand. |
| 4280 | ☐ for Summary Judgment in favor of _____ | is GRANTED. |
| 5280 | ☐ | is DENIED |
| 4004 | ☐ to Dismiss as to Defendant _____ | is GRANTED. |
| 5004 | ☐ | is DENIED. |
| ( ) | ☐ Motion to/for ____ _for Alexander_ _H. Burke_ | is CONTINUED |
| ( ) | ☐ for HEARING at ____ a.m./p.m. on _____, ____ in Rm. ____ | |
| ( ) | ☒ with the following briefing schedule: | |

_The court finds $325 per hour for both J. Keogh and_
_$75 per hour to be reasonable hourly rates for this_
_case. The time expended by plaintiff's counsel in_

( ) ☐ _prosecuting this case was reasonable, as were_
_the costs, as detailed in the Keogh petition_

( ) ☐ See Attached Order: _submitted by plaintiff. Plaintiff is awarded_
_$18,651.00 in reasonable fees, and $548.80 in costs for a_

Atty. No.: _39042-_ ENTERED: _total of $19,199.80 pursuant_
Name: _Ian Alligood & Keith Keogh_ DATE: _to the Illinois Consumer Fraud Act._
Atty. for: _Plaintiff_

Address: _227 W Monroe Suite 1100_ Judge Dennis M. McGuire
City/State/Zip: _Chicago IL 60606_ _____
Telephone: _312 726-1092_ Judge JAN 2 2 2008

Judge's No.

Circuit Court - 1856

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

# Exhibit 3

Order                                    CCG N002-300M-2/24/05 (                    )

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Forbes

v.                                  } No. 04 CH 7439

E.I. Funding, Edward Evans & Edwin
Evans

### ORDER

This matter coming to be heard on hearing for plaintiff's fee petition pursuant to the Order of Judgment entered on April 21, 2008 and the Court being fully advised, IT IS HEREBY ORDERED:

① This Court finds that the hourly rates of $325.00 for Keith J. Keogh and $275.00 an hour for Alexander H. Burke are reasonable and the total time spent was reasonable and necessary for the prosecution of this case against E.I Funding, Edwin Evans and Edward Evans.

② This Court awards fees in the amount of $44,858.50 and cost in the amount of $1,957.77.

③ This Order is final and appealable.

Atty. No.: 39042

Name: Keith Keogh

Atty. for: Forbes

Address: 227 W Monroe

City/State/Zip: Chicago IL 60606

Telephone: 312 726-1092

ENTERED:

Dated:

ENTERED
JUDGE MARTIN S. AGRAN -1630-

MAY 16 2008

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Judge                                              Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# Appendix B

**Appendix B**: Chart of selected Seventh Circuit Securities Cases Awarding 30% - 33.3% of Fund as Attorney's Fees

| No. | Name of Class Action | 7th Circuit District Court | Case No. | Date of Final Approval | Judge | Fee % Approved |
|---|---|---|---|---|---|---|
| 1 | Rehm v. Eagle Finance | ND IL | 96-2455 | 12/29/98 | Guzmán & Moran | 33.33% |
| 2 | Antell v. Arthur Andersen | ND IL | 97-3456 | 10/01/99 | Nan R. Nolan | 33.33% |
| 3 | In re First Merchants Securities Litigation | ND IL | 97-2715 | 04/21/00 | David H. Coar | 33.33% |
| 4 | In Re Spyglass, Inc. Securities Litigation | ND IL | 99-5 12 | 05/09/00 | Ronald A. Guzmán | 33.00% |
| 5 | Miller v. Material Sciences Corp. | ND IL | 97-2450 | 08/01/00 | Robert W. Gettleman | 33.30% |
| 6 | In re NextLevel Systems, Inc. Securities Litigation | ND IL | 97-7362 | 03/14/01 | Martin Ashman | 33.33% |
| 7 | In re Nanophase Securities Litigation | ND IL | 98-3450 | 03/27/01 | Coar | 33.33% |
| 8 | In re Mercury Finance Company of Illinois Securities Litigation | ND IL | 97-3035 | 07/06/01 | Charles R. Norgle Sr. | 33.33% |
| 9 | In re Analytical Surveys Securities Litigation | SD IN | 00-201 | 09/18/01 | McKinney | 33.33% |
| 10 | Market Street Sec. v. Racing Champions | ND IL | 00-3267 | 12/19/01 | Suzanne B. Conlon | 30.00% |
| 11 | In re Harnischfeger Industries, Inc. Securities Litigation | ED WI | 98-524 | 11/22/02 | Lynn Adelman | 30.00% |
| 12 | Chu v. Sabratek Corp. | ND IL | 99-35 1 | 05/23/03 | John W. Darrah | 30.00% |
| 13 | In re Westell Technologies Securities Litigation | ND IL | 00-6735 | 06/18/03 | Arlander Keys | 33.33% |
| 14 | In re Brightpoint, Inc. Securities Litigation | SD IN | 01-1796 | 07/18/03 | Tinder | 33.33% |
| 15 | Tatz v. Nanophase | ND IL | 01-08440 | 12/01/03 | Magis. Martin | 30.00% |

|   |   |   |   |   | C. Ashman |   |
|---|---|---|---|---|---|---|
| 16 | In re Allied Products Corporation, Inc. Securities Litigation | ND IL | 99-3597 | 01/14/04 | Harry D. Leinenweber | 33.33% |
| 17 | Winn v. Symons International Group | SD IN | IP00-310 | 01/21/04 | Barker | 33.33% |
| 18 | Singer v. Nicor | ND IL | 02-05168 | 07/12/04 | Norgle | 30.00% |
| 19 | Friedman v. Rayovac | WD WI | 02-308 | 07/22/04 | Barbara B. Crabb | 33.33% |
| 20 | Taubenfeld v. AON | ND IL | 02-05631 | 07/27/04 | Harry D. Leinenweber | 3 0.00% |
| 21 | In re Shopko Litigation | ED WI | 01-1034 | 08/20/04 | Lynn Adelman | 33.33% |
| 22 | Miller v. Apropos | ND IL | 01-08406 | 08/25/04 | Coar | 30.00% |
| 23 | In re Hartmarx Securities Litigation | ND IL | 01-07832 | 11/03/04 | Charles P. Kocoras | 33.33% |
| 24 | Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewelers | ND IL | 04-1107 | 07/24/06 | Amy St. Eve | 30.00% |
| 25 | Takara Trust v. Molex | ND IL | 05-1245 | 03/01/07 | Ruben Castillo | 30.00% |
| 26 | In re Spiegel, Inc. Securities Litigation | ND IL | 02-08946 | 03/02/07 | Rebecca R. Pallmeyer | 30.00% |

# Appendix C

B2

# A nationwide sampling of law firm billing rates

THE NATIONAL LAW JOURNAL/WWW.NLJ.COM

Monday, December 10, 2007

*The National Law Journal asked the respondents to its 2007 survey of the nation's 250 largest law firms to provide a range of hourly billing rates for partners and associates. The firms that supplied this information—including some firms that are not in the NLJ 250—are listed below in alphabetical order. We also asked firms to provide average and median billing rates, and several complied. The number after a firm's name indicates the total number of attorneys at the firm. The city listed below the name of a firm is the location of its principal or largest office.*

## A B C

**Adams and Reese (256)**
(New Orleans)
Partners $225-$500 (average $305)
Associates $165-$235 (average $198)
(median $300)
Firmwide (average $197)

**Andrews Kurth (396)**
(Houston)
artners $400-$795
Associates $210-$460
(median $275)

**Armstrong Teasdale (270)**
(St. Louis)
Partners $295-$450
Associates $165-$295

**Arent Fox (328)**
(Washington)
Partners $395-$675
Associates $240-$440

**Baken, Donelson, Bearman, Caldwell & Berkowitz (528)**
(Memphis, Tenn.)
Partners $230-$525 (average $325)
(median $320)

**Briggs and Morgan (178)**
(Minneapolis)
Partners $250-$500 (average $391)
Associates $195-$325 (average $233)
(median $230)
Firmwide (average $344) (median $350)

**Brinks Hofer Gilson & Lione (168)**
(Chicago)
Partners $300-$650 (average $479)
(median $485)
Associates $180-$410 (average $273)
(median $250)
Firmwide (average $365)
(median $350)

**Broad and Cassel (175)**
(Orlando, Fla.)
Partners $250-$450 (average $361)
(median $360)
Associates $165-$310 (average $232)
(median $225)
Firmwide (average $294) (median $275)

**Brownstein Hyatt Farber Schreck (177)**
(Denver)
Partners $260-$675 (average $373)
(median $390)
Associates $170-$270 (average $219)
(median $217.5)
Firmwide (average $308) (median $325)

**Bryan Cave (847)**
(St. Louis)
Partners $320-$695 (average $493)
(median $490)
Associates $165-$495 (average $295)
(median $296)
Firmwide (average $394) (median $375)

**Buchanan Ingersoll & Rooney (501)**
(Pittsburgh)
Partners $320-$730
Associates $150-$460

**Bullivant Houser Bailey (180)**
(Portland...)

## D E F

**Curtis, Mallet-Prevost, Colt & Mosle (221)**
(New York)
Partners $635-$735 (average $666)
(median $685)
Associates $260-$560 (average $361)
(median $360)
Firmwide (average $396) (median $490)

**Davis Wright Tremaine (449)**
(Seattle)
Partners $300-$695 (average $430)
(median $422)
Associates $170-$390 (average $257)
(median $256)
Firmwide (average $375)
(median $375)

**Day Pitney (400)**
(Florham Park, N.J.)
Partners $350-$650 (average $472)
(median $465)
Associates $210-$525 (average $306)
(median $310)
Firmwide (average $374) (median $375)

**Dickinson Wright (234)**
(Detroit)
Partners $260-$530
Associates $170-$275

**Dickstein Shapiro (380)**
(Washington)
Partners $425-$825 (average $552)
(median $550)
Associates $225-$440 (average $336)
(median $360)
Firmwide (average $438) (median $425)

**Dinsmore & Shohl (316)**
(Cincinnati)
Partners $235-$475 (average $342)
(median $340)
Associates $155-$285 (average $199)
(median $190)

## G H I

**Fenwick & West (223)**
(Mountain View, Calif.)
Partners $500-$775 (average $590)
(median $600)
Associates $245-$500 (average $360)
(median $370)
Firmwide (average $395) (median $410)

**Foley & Lardner (1,011)**
(Milwaukee)
Partners (average $550) (median $550)
Associates (average $387)
(median $375)
Firmwide $185-$855
(average $476) (median $475)

**Ford & Harrison (190)**
(Atlanta)
Partners $325-$560
Associates $210-$395

**Fowler White Boggs Banker (209)**
(Tampa, Fla.)
Partners $230-$500 (average $345)
(median $340)
Associates $150-$325 (average $217)
(median $210)
Firmwide (average $303) (median $300)

**Fox Rothschild (417)**
(Philadelphia)
Partners $240-$595
Associates $190-$440

**Frost Brown Todd (380)**
(Cincinnati)
Partners $225-$455 (average $303)
(median $295)
Associates $145-$255 (average $180)
(median $170)
Firmwide (average $256) (median $255)

**Gardere Wynne Sewell (284)**
(Dallas)

THE NATIONAL LAW JOURNAL /WWW.NLJ.COM

**Hogan & Hartson (1,092)**
(Washington)
Partners $300-$850 (average $600)
(median $590)
Associates $130-$525 (average $385)
(median $370)
Firmwide (average $490)

**Holland & Hart (347)**
(Denver)
Partners $275-$585 (average $388)
(median $385)
Associates $165-$345 (average $269)
(median $275)
Firmwide (average $335)
(median $335)

**Holme Roberts & Owen (224)**
(Denver)
Partners $285-$635 (average $412)
(median $410)
Associates $195-$420 (average $284)
(median $265)
Firmwide (average $533) (median $345)

**Howard Rice Nemerovski Canady Falk & Rabkin (114)**
(San Francisco)
Partners $495-$775
Associates $275-$485

**Hughes Hubbard & Reed (343)**
(New York)
Partners $595-$825
Associates $240-$560

**Husch & Eppenberger (382)**
(St. Louis)
Partners $190-$425 (average $297)
(median $295)
Associates $130-$260 (average $179)
(median $175)
Firmwide (average $248) (median $245)

**IKL**

**Jackson Lewis (618)**
(White Plains, N.Y.)

**Leonard, Street and Deinard (180)**
(Minneapolis)
Partners $300-$500
Associates $185-$300

**Lewis, Rice & Fingersh (185)**
(St. Louis)
Partners $240-$425
Associates $130-$295

**Lindquist & Vennum (174)**
(Minneapolis)
Partners $260-$500
Associates $165-$260

**Locke Liddell & Sapp (421)**
(Dallas)
Partners $375-$900 (average $488)
(median $490)
Associates $190-$390 (average $281)
(median $280)
Firmwide (average $399) (median $425)

**Loeb & Loeb (280)**
(Los Angeles)
Partners $425-$875 (average $606)
(median $600)
Associates $240-$500 (average $384)
(median $400)
Firmwide (average $505)
(median $500)

**Lord, Bissell & Brook (280)**
(Chicago)
Partners $335-$690 (average $473)
(median $475)
Associates $200-$410 (average $299)
(median $300)
Firmwide (average $410)
(median $415)

**Lowenstein Sandler (271)**
(Roseland, N.J.)
Partners $380-$725
Associates $205-$395

**Luce, Forward, Hamilton & Scripps (188)**
(San Diego)
Partners $325-$725 (average $465)
(median $475)
Associates $220-$450 (average $281)
(median $280)
Firmwide (average $381)
(median $395)

**MNO**

**Manatt, Phelps & Phillips (320)**
(Los Angeles)
Partners $520-$785 (average $600)
(median $590)
Associates $265-$480 (average $395)
(median $415)
Firmwide (average $518)
(median $550)

SEE 'RATES' PAGE B4

K L

ckson Lewis (416)
Vhite Plains, N.Y.)
rtners $235-$575
ssociates $210-$450

nman & Block (495)
hicago)
artners $450-$900 (average $562)
(median $525)
ssociates $275-$425 (average $327)
(median $325)

our    "alkon, Waechter, Poitevent, Carrère &
eine...? (230)
New Orleans)
*artners $210-$600
Associates $150-$225

(alley Drye & Warren (390)
New York)
Partners $400-$800
Associates $255-$500

Knobbe, Martons, Olson & Bear (200)
(Irvine, Calif.)
Partners $340-$645
Associates $215-$420

Lane Powell (175)
(Seattle)
Partners $300-$515 (average $370)
(median $370)
As    ates $205-$300 (average $255)
(median $255)
Firmwide (average $343)
(median $345)

Lathrop & Gage (271)
(Kansas City, Mo.)
Partners $225-$450 (average $300)
(median $300)
Associates $140-$300 (average $185)
(median $185)
Firmwide (average $215)
(median $260)

EPSTEIN BECKER GREEN

global reach that takes a

five complementary areas of practice

Business Law
Health Care and Life Sciences
Labor and Employment
Litigation
Real Estate

# Billing rates as reported by the nation's law firms

'RATES' FROM PAGE B3

**Marshall, Dennehey, Warner, Coleman & Goggin (378)**
(Philadelphia)
Partners $135-$400
Associates $120-$300

**McCarter & English (400)**
(Newark, N.J.)
Partners $325-$650
Associates $205-$395

**McElroy, Deutsch, Mulvaney & Carpenter (238)**
Morristown, N.J.)
Partners $295-$450 (average $250)
Associates $135-$225 (average $180)
Firmwide (average $195) (median $215)

**McKee Nelson (224)**
(New York)
Partners $635-$920 (average $760)
Associates $375-$595 (average $446)
Firmwide (average $489) (median $475)

**Michael Best & Friedrich (224)**
(Milwaukee)
Partners $225-$550 (average $363)
Associates $185-$300 (average $234)
Firmwide (average $321)
(median $325)

**Miles & Stockbridge (212)**
(Baltimore)
Partners $315-$535 (average $397)
Associates $205-$405 (average $260)

**Miller, Canfield, Paddock and Stone (378)**
(Detroit)
Partners $265-$595 (average $400)
Associates $160-$340 (average $225)
(median $400)
Firmwide (average $285) (median $335)

**Miller & Martin (185)**

## PQR

**Ogletree, Deakins, Nash, Smoak & Stewart (392)**
(Greenville, S.C.)
Partners $270-$575 (average $348)
Associates $200-$360 (average $256)
Firmwide (average $312)

**Patton Boggs (510)**
(Washington)
Partners $320-$920 (average $536)
(median $525)
Associates $205-$520 (average $375)
(median $385)
Firmwide (average $456)
(median $455)

**Pepper Hamilton (500)**
(Philadelphia)
Partners $335-$750
Associates $200-$425

**Perkins Coie (618)**
(Seattle)
Partners $205-$805
Associates $145-$500

**Phelps Dunbar (280)**
(New Orleans)
Partners $170-$450 (average $243)
Associates $130-$205 (average $174)
(median $175)
Firmwide (average $184)

**Phillips Lytle (178)**
(Buffalo, N.Y.)
Partners $245-$435 (average $309)
(median $300)
Associates $140-$300 (average $205)
(median $205)
Firmwide (average $223)
(median $215)

**Polsinelli Shalton Flanigan Suelthaus (310)**
(Kansas City, Mo.)
Partners $250-$600
Associates $175-$250

**Quarles & Brady (472)**

## STU

**Saul Ewing (247) (Philadelphia)**
Partners $315-$750 (average $426)
(median $415)  "
Associates $180-$485 (average $273)
(median $255)
Firmwide (average $377) (median $365)

**Schnader Harrison Segal & Lewis (184)**
(Philadelphia)
Partners $240-$750
Associates $175-$385

**Schulte Roth & Zabel (461) (New York)**
Partners $650-$850 (average $724)
(median $745)
Associates $235-$585 (average $435)
(median $410)

**Sheppard, Mullin, Richter & Hampton (428)**
(Los Angeles)
Partners $425-$795
Associates $260-$550

**Shughart Thomson & Kilroy (172)**
(Kansas City, Mo.)
Partners $235-$475
Associates $160-$225

**Shumaker, Loop & Kendrick (171)**
(Toledo, Ohio)
Partners $200-$465 (average $311)
(median $305)
Associates $180-$360 (average $221)
(median $220)
Firmwide (average $289)
(median $300)

**Sills Cummis Epstein & Gross (178)**
(Newark, N.J.)
Partners $350-$650
Associates $195-$375

**Smith, Gambrell & Russell (185) (Atlanta)**
Partners $250-$575
Associates $175-$345

**Snell & Wilmer (438) (Phoenix)**
Partners $275-$675 (average $390)

## VW

**Sutherland Asbill & Brennan (511)**
(Atlanta)
Partners $375-$715 (average $511)
(median $500)
Associates $215-$415 (average $292)
(median $280)
Firmwide (average $335) (median $305)

**Thacher Proffitt & Wood (310)**
(New York)
Partners $525-$785 (average $674)
(median $700)
Associates $275-$495 (average $355)
(median $365)
Firmwide (average $428)
(median $395)

**Thompson Coburn (320)**
(St. Louis)
Partners $265-$580
Associates $170-$370

**Thompson & Knight (414)**
(Dallas)
Partners $370-$730 (average $496)
(median $485)
Associates $205-$370 (average $295)
(median $310)
Firmwide (average $415)
(median $400)

**Ulmer & Berne (174)**
(Cleveland)
Partners $240-$470 (average $343)
Associates $165-$290 (average $212)
Firmwide (average $280)

**Vedder, Price, Kaufman & Kammholz (266)**
(Chicago)
Partners $335-$650 (average $430)
(median $425)
Associates $205-$410 (average $281)
(median $370)
Firmwide (average $372)
(median $365)

**Wiggin and Dana (146)**
(New Haven, Conn.)

Firmwide (average $562.1)
(median $325)

**Mills & Stockbridge (212)**
(Baltimore)
Partners $315-$535 (average $397)
Associates $205-$405 (average $260)

**Miller, Canfield, Paddock and Stone (378)**
(Detroit)
Partners $265-$595 (average $400)
(median $400)
Associates $160-$340 (average $225)
(median $220)
Firmwide (average $285) (median $335)

**Miller & Martin (195)**
(Chattanooga, Tenn.)
Partners $230-$580 (average $338)
(median $340)
Associates $160-$295 (average $201)
(median $195)
Firmwide (average $306) (median $320)

**Montgomery, McCracken, Walker & Rhoads (158)**
(Philadelphia)
Partners $320-$575 (average $419)
Associates $195-$320 (average $260)
Firmwide (average $360)

**Moore & Van Allen (284)**
(Charlotte, N.C.)
Partners $265-$765
Associates $175-$330

**Morgan, Lewis & Bockius (1,384)**
(Philadelphia)
Partners $375-$850
Associates $200-$575

**Morris, Manning & Martin (170)**
(Atlanta)
Partners $350-$625 (average $436)
(median $395)
Associates $180-$400 (average $285)
Firmwide (average $380)
(median $440)

**Nexsen Pruet Adams Kleemeier (171)**
(Columbia, S.C.)
Partners $220-$420
Associates $150-$250

Firmwide (average $154)

**Phillips Lytle (173)**
(Buffalo, N.Y.)
Partners $245-$435 (average $309)
(median $300)
Associates $140-$300 (average $205)
Firmwide (average $223)
(median $215)

**Polsinelli Shalton Flanigan Suelthaus (318)**
(Kansas City, Mo.)
Partners $250-$600
Associates $175-$250

**Quarles & Brady (472)**
(Milwaukee)
Partners $260-$575 (average $377)
(median $375)
Associates $185-$335 (average $233)
(median $235)
Firmwide (average $319) (median $325)

**Reed Smith (1,447)**
(Pittsburgh)
Partners $330-$825 (average $558)
Associates $200-$510 (average $374)
(median $350)
Firmwide (average $395)
(median $385)

**Robinson & Cole (209)**
(Hartford, Conn.)
Partners $340-$575 (average $424)
(median $420)
Associates $200-$325 (average $295)
(median $280)
Firmwide (average $328) (median $330)

**Roetzel & Andress (221)**
(Akron, Ohio)
Partners $210-$460 (average $302)
(median $300)
Associates $110-$275 (average $198)
(median $200)
Firmwide (average $264)
(median $260)

**Rutan & Tucker (149)**
(Costa Mesa, Calif.)
Partners $335-$600
Associates $210-$350

Associates $180-$360 (average $221)
(median $220)
Firmwide (average $289)
(median $300)

**Sills Cummis Epstein & Gross (178)**
(Newark, N.J.)
Partners $350-$650
Associates $195-$375

**Smith, Gambrell & Russell (185)** (Atlanta)
Partners $250-$575
Associates $175-$345

**Snell & Wilmer (488)** (Phoenix)
Partners $275-$675 (average $390)
Associates $170-$390 (average $248)

**Steptoe & Johnson PLLC (160)**
(Clarksburg, W.Va.)
Partners $200-$325
Associates $170-$250

**Stinson Morrison Hecker (382)**
(Kansas City, Mo.)
Partners $275-$500 (average $379)
(median $375)
Associates $160-$350 (average $231)
(median $230)
Firmwide (average $324) (median $330)

**Stoel Rives (342)** (Portland, Ore.)
Partners $275-$500 (average $379)
(median $375)
Associates $160-$350 (average $231)
(median $230)
Firmwide (average $324) (median $330)

**Strasburger & Price (178)** (Dallas)
Partners $225-$560 (average $367)
(median $363)
Associates $200-$395 (average $234)
(median $223)
Firmwide (average $326)
(median $322)

**Sullivan & Worcester (170)** (Boston)
Partners $415-$700 (average $550)
(median $540)
Associates $245-$420 (average $309)
(median $290)
Firmwide (average $438) (median $440)

Firmwide (average $280)

V W

**Vedder, Price, Kaufman & Kammholz (265)**
(Chicago)
Partners $335-$650 (average $430)
(median $425)
Associates $205-$410 (average $281)
(median $370)
Firmwide (average $372)
(median $365)

**Wiggin and Dana (148)**
(New Haven, Conn.)
Partners $295-$590
Associates $195-$350

**Williams Mullen (614)**
(Richmond, Va.)
Partners $300-$600
Associates $205-$425

**Wilmer Cutler Pickering Hale and Dorr (1,051)**
(Washington)
Partners $475-$1,000
Associates $215-$495

**Winstead (306)**
(Dallas)
Partners $345-$620
Associates $180-$360

**Winston & Strawn (912)**
(Chicago)
Partners $400-$845 (average $608
capital partner/$515 income partner)
(median $640 capital partner/$585
income partner)
Associates $200-$590 (average $365)
(median $395)
Firmwide (average $455)
(median $523)

**Womble Carlyle Sandridge & Rice (510)**
(Winston-Salem, N.C.)
Partners $290-$575 (average $426)
(median $425)
Associates $195-$370 (average $268)
(median $265)
Firmwide (average $355)
(median $360) [m]

# Appendix D

## IN THE CIRCUIT COURT FOR THE EIGHTEENTH JUDICIAL CIRCUIT
## DU PAGE COUNTY, WHEATON, ILLINOIS

| | |
|---|---|
| CATHY TERRILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 01 L 00529 |
| | ) |
| OAKBROOK HILTON SUITES | ) |
| AND GARDEN INN, L.L.C. | ) |
| d/b/a HILTON SUITES and | ) |
| HILTON GARDEN INN. | ) |
| | ) |
| Defendant. | ) |

### AFFIDAVIT OF MICHAEL B. HYMAN

Michael B. Hyman, on oath duly sworn, deposes and states that if sworn as a witness in this matter, he could competently testify to the following based upon personal knowledge:

1.    I am attorney licensed to practice law in Illinois. I have been practicing law for over 27 years, and received my Illinois law license in 1977. I am a principal of the Chicago based law firm of Much Shelist Freed Ament Denenberg Ament & Rubinstein P.C., and am a member of the firm's management committee that among its functions sets the billing rates for attorneys in our firm.

2.    I have substantial experience in class action litigation, and concentrate in consumer, antitrust and securities class action litigation in Illinois and nationwide. I have been actively involved in and acted as lead or co-lead counsel in some of the largest consumer and other class actions in Illinois and in the country. My resume is attached.

3.    I am currently first vice-president of the Chicago Bar Association. I am a former chair and officer of the CBA Class Action Committee, the current chair of the Consumer and Personal Rights Litigation Committee of the Section of Litigation of the American Bar Association and president of the Decalogue Society of Lawyers, an ethnic bar association headquartered in Chicago.

4.    I have worked extensively with many class action and consumer class lawyers in Illinois and throughout the country. Based on my participation in numerous fee petitions in such cases, I am familiar with the market rates for attorneys in such cases, and the rates awarded by courts including the fees awarded to many Illinois and Chicago area class-action attorneys and firms. As a member of my firm's management committee, I participate in setting the billing rates for attorneys in our firm. In setting such rates, we survey the hourly rates billed by other

1

Chicago area firms that provide similar services, and set our rates to be consistent with the market rates based on informal surveys. My time is currently billed at the rate of $460 per hour, and is consistent with and falls within the market rate in the Chicago area for the type of legal work that I perform. I base this opinion on my knowledge of the market rates charged by attorneys with similar experience. Such knowledge comes from knowledge of the rates approved in class action fee petitions filed by my firm, and from my firm's informal surveys of other similarly situated law firms' billing rates. Courts in a number of class actions have approved fee awards for my time at the firm's current hourly rate.

5.     I have known Peter Lubin and Vincent DiTommaso each in a professional capacity for more than 20 years. I have worked together with Mr. Lubin and/or Mr. DiTommaso as co-lead counsel in a number of class actions. I have also worked against Mr. Lubin in the derivative and securities class actions arising out of the collapse of Continental Illinois National Bank.

6.     Through my many years of working with Mr. Lubin and Mr. DiTommaso I have extensive first hand knowledge of the quality and nature of the legal work that they perform. Based on that knowledge and my knowledge of the legal rates charged in the Chicago area for consumer class action work, and the rates awarded by courts for that work, I am qualified to provide an opinion as to the market rate for Mr. Lubin and Mr. DiTommaso's services. In my opinion, Mr. Lubin and Mr. DiTommaso's rate in this case of $390 per hour is well within the market rate in this area for consumer class action legal services. In my opinion, based on my knowledge of Mr. Lubin and Mr. DiTommaso's experience, abilities and the quality of their work they could charge $450 per hour and that such rate would be within the market rate in the Chicago area.

7.     In consumer class actions, my firm bills an associate in class actions and consumer class actions, who is three years out of law school, at the rate of $285 per hour. This rate is consistent with and falls within the market rate in the Chicago area for associate rates for this type of work. My knowledge comes from knowledge of the rates approved in class action fee petitions filed by my firm, and from my firm's informal surveys of other similarly situated law firms' billing rates. Courts in a number of class actions have approved fee awards for our associates attorneys at our then current rate structure.

8.     I have spent time working with Jason Shanfield of DiTommaso Lubin, and am familar with his experience and abilities. In my opinion, Mr. Shanfield's rate of $220 per hour in this case is well within the market rate in this area for consumer class action legal services. In my opinion, based on my knowledge of Mr. Shanfield's experience, abilities and the quality of his work his firm could bill him out at $285 per hour, and that such rate would be within the

2

market rate in the Chicago area.

9.   In consumer class actions, my firm bills a law clerk and paralegals in class actions and consumer class actions at the rate of $150 per hour. This rate is consistent with and falls within the market rate in the Chicago area for law clerk and paralegal rates for this type of work. My knowledge comes from knowledge of the rates approved in class action fee petitions filed by my firm, and from my firm's informal surveys of other similarly situated law firms' billing rates. Courts in a number of class actions have approved fee awards for our law clerks and paralegals at our then current rate structure.   In my opinion, based on my knowledge of the law clerk's experience, abilities and the quality of their work the firm could bill them out at $110 per hour, and that such rate would be within the market rate in the Chicago area.

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that the statements set forth in this instrument are true and correct.

Michael B. Hyman

SUBSCRIBED AND SWORN to
before me this 4th day of August, 2004.

Notary Public

OFFICIAL SEAL
RHONDA D MCLARNEY
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 07-01-08

3

# Appendix E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SAUL H. CATALAN and | ) |
| MIA MORRIS | ) |
| | ) No. 05 C 6920 |
| Plaintiffs, | ) |
| | ) Judge Dow |
| v. | ) |
| | ) Magistrate Judge Nolan |
| RBC MORTGAGE CO. d/b/a RBC | ) |
| CENTURA BANK and GMAC | ) |
| MORTGAGE CORP., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF JAMES SHEDDEN IN SUPPORT OF
## PLAINTIFF'S PETITION FOR ATTORNEY'S FEES AND COSTS

I, James Shedden, being first duly sworn under oath, do depose and state as follows:

1. I am a 1982 graduate of the University of Illinois College of Law. From 1983 to the present I have practiced with the firm of Schad, Diamond & Shedden, formerly known as Beeler, Schad & Diamond, P.C. in Chicago, Illinois. Schad, Diamond & Shedden, P.C. currently has seven attorneys. In 1991, I became a shareholder in the firm.

2. My firm concentrates its practice in class actions and multi-plaintiff litigation involving investment fraud, consumer fraud and consumer rights. Many of the cases my firm accepts are brought under federal and state statutes with fee-shifting provisions. In most of these cases, it is not economically feasible for an individual to hire an attorney to prosecute his or her claims without the fee-shifting provision, because the actual and statutory damages are small compared to the cost of bringing suit.

3. I am familiar with the market for legal services in the Chicago area. The rates my firm charges are $500-600 per hour for partner (director) time (my hourly rate is currently $600), $280-325 per hour for associate time and $100-140 for paralegal time. These are the rates my firm established in March 2008. These are rates my firm charges for contingency cases, and for cases in which we billed and were paid monthly.

4. The hourly rates my firm charges are determined in part by the risks associated with contingency fee litigation. These include: the risk of nonpayment, the time delay in

payment in contingency cases, the risk that as the case progresses the facts will develop differently from, or in addition to, the facts of which we were first advised, the risk that the law will change before the case is resolved, or that after the case is resolved, an appellate court will issue an opinion either stating new principles of law adverse to the plaintiff, or reverse earlier opinions favorable to the plaintiff, or apply controlling legal principles in a manner I did not anticipate.

5. An important factor my firm takes into account in deciding whether to take a statutory fee-shifting case where damages are low in relation to the time and effort necessary to prosecute the case – which, in most cases, is the fact – is whether we believe the courts are adequately awarding attorneys' fees to successful plaintiff lawyers in those cases. If we determine that the courts are hostile to awarding fees in certain types of statutory fee-shifting cases, and will reduce the successful plaintiffs attorneys' fee award because only a small recovery is obtained for the plaintiff, we decline to take such cases.

6. Legislatures pass fee-shifting statutes to enable plaintiffs to obtain legal representation from private lawyers who act as private attorneys general. In order for these statutes to work as the legislature intended, it is necessary that courts award successful litigants their attorneys' fees, and not penalize those litigants or their attorneys because the recovery to the plaintiff is low in relation to the attorneys' fees awarded. Private enforcement enables the legislature to address problems without increasing government spending and taxes.

7. The $340 per hour rate sought by counsel for the Plaintiff in this matter, Keith Keogh, is well within the range of rates charged in the Chicago market for work performed in contingent, statutory fee-shifting cases for a lawyer of Mr. Keogh's experience and skill, particularly considering Mr. Keogh's extensive experience in consumer protection law. My opinion is based upon my familiarity with the work of Mr. Keogh, as I have worked with him on matters, so I have personal knowledge of his legal abilities. I am also aware of his reputation in the legal community, which is excellent.

The $288 per hour sought for Alexander Burke's work is within the range of rates charges in the Chicago market for work performed in contingent statutory fee shifting cases for lawyers of Mr. Burke's experience and skill. I am also familiar with Mr. Burke's work and his reputation in the legal community which is also excellent.

The rate sought for Linda Barksdale, Mr. Keogh's paralegal, of $100 per hour is within the range of what fees for paralegal work in the Chicago market are.

8. In addition, the time expended on this case is reasonable, given the work performed. Another important factor in the reasonableness of the fees which Mr. Keogh is seeking is the fact that the case has been handled by Mr. Keogh since 2005, during which time Mr. Keogh has not received any compensation for his work on the case.

9.      I have reviewed the time records from Mr. Keogh's firm in this case, and believe that the time expended was reasonable.

10.     I have also reviewed the report of expenses incurred for this the case. I believe the expenses sought to be reasonable and necessarily incurred.

11. I am a member of Illinois State bar (1982), and the bar for the U.S. District Court for the Northern District of Illinois (1987). I am also a member of the trial bar for the U. S. District Court for the Northern District of Illinois and a member of the bar for the United States Court of Appeals for the Seventh Circuit.

_____   11/26/08
JAMES SHEDDEN          DATE

## VERIFICATION BY CERTIFICATION

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in the foregoing instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that the undersigned verily believes the same to be true.

_____   11/26/08
JAMES SHEDDEN          DATE

# Appendix F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SAUL H. CATALAN and<br>MIA MORRIS | ) No. 05 C 6920 |
| | ) |
| Plaintiffs, | ) Judge Dow |
| | ) |
| v. | ) Magistrate Judge Nolan |
| | ) |
| RBC MORTGAGE CO., d/b/a RBC Centura<br>Bank and GMAC Mortgage Corp., | ) |
| | ) |
| Defendants. | ) JURY DEMANDED |

### CERTIFICATION OF LANCE RAPHAEL

1.    My name is Lance Raphael and I swear under penalties of perjury to all of the facts set forth herein. My current hourly rate is $550.00, based upon the factors set forth herein below in ¶ 7 through 23.

2.    I have had the opportunity to review the time records from the LAW OFFICES OF KEITH J. KEOGH, LTD. for Keith Keogh and for Alexander Burke through July 24, 2008.

3.    The records demonstrate a billing by tenth of an hour increments which is becoming the standard over quarter hour increments of the past. The records generally reflect the work performed and identify the dates and times of the work, as well as who performed the work.

4.    As for the work reflected in the records I have reviewed, from my read of the records it appears to me that the more experienced lawyer, Mr. Keogh, appears to have done a significant amount of work in orchestrating the litigation, outlining the arguments with his associate and then editing his work. It appears that he delegated the bulk of the drafting process to his associates in order to maximize firm efficiency while maintaining the quality of representation that the client probably was expecting by having Mr. Keogh as their main contact.

5.    In my personal experience, it is rare, if ever, that a consumer case is handled by a single lawyer as the issues are too complex or the litigation is too demanding to allow for a single person to be solely responsible for the work performed. Further, it is my personal experience that in order to have malpractice coverage, at least two lawyers must cover any item of litigation or in the case of a solo practitioner a second lawyer must be referenced for backup, without seeking a special dispensation from the insurance carrier.

1

6.     I am informed that the rates for Mr. Keogh's office are $340 for Mr. Keogh and $288 for Mr. Burke in 2008. These are certainly well within the rates of lawyers in the consumer rights field with which I am familiar.

7.     I am a member in good standing of the bars of the following courts:

Supreme Court of Illinois
November 4, 1993

U.S. District Court for the Northern District of Illinois
December 16, 1993

U.S. Court of Appeals, Second Circuit
January 17, 2002

U.S. Court of Appeals, Seventh Circuit
December 23, 2003

U.S. District Court for the Northern District of Indiana
June 8, 2005

U.S. District Court for the Eastern District of Wisconsin
December 12, 2007

U.S. District Court for the Eastern District of Michigan
March 17, 2008

8.     I have also been admitted *pro hac vice* to, among others, the following courts:

The U.S. District Court for the District of Minnesota, St. Paul, Minnesota;

The Harris County State Court, Houston, Texas;

The Hennipan County State Court, Albany, California;

The U.S. District Court for the Eastern District of New York;

The U.S. District Court for the Southern District of New York;

The Superior Court of the State of Connecticut, J.D. of Stamford, Connecticut; and

The U.S. District Court for the Southern District of Florida.

**Actual Payment, Approval or Agreement of Consumer Advocacy Center Rates**

2

14.     My 2008 hourly rate is \$550.00, which is consistent with and falls within the market rate in the Chicago area for consumer rights litigation work of similar skill level and experience.1

15.     Since January 1, 2002, both I and the Consumer Advocacy Center, P.C. have charged and received payment from consumers for services2 ranging from a simple review of documentation, investigation of facts or performing legal research, to litigating individual claims, at the current hourly rates described in this certification on a non-contingent basis.

16.     In addition to charging consumers for certain consumer law-related tasks, based upon the factors set forth in this Declaration, unless otherwise noted, my contingent rates and the rates of the employees and associates at my firm have been approved by the following Courts, after being negotiated at arms-length with opposing counsel, or as a result of a fee petition:

a)      A rate of \$550.00 was approved in *Starzynski v. Friedman and Wexler, et al.*, 07 C 1254, by the Honorable Chief Judge James F. Holderman, approval granted November 13, 2008;

b)      A rate of \$550.00 was approved in *Olszowka v. Village of Chicago Ridge*, 07 C 6115, by the Honorable Magistrate Judge Susan E. Cox of the U.S. District Court for the Northern District of Illinois, Eastern Division, approval granted November 12, 2008;

c)      A rate of \$550.00 was approved in *Curtis et al., v. Vienna Beef, Ltd.*, 07 CH 27980, by the Honorable Judge Palmer of the Circuit Court of Cook County, Illinois, Chancery Division, order entered October 10, 2008;

---

1     Of the dozen or so plaintiffs' consumer rights firms in the Chicago area, my rate falls within the range of rates charged by all other such lawyers who practice in my area, many of whom I have worked with personally. For example, these partners charge as follows: a) Jim Shedden, with whom I have worked before, charged \$525.00 for work performed in 2003 and \$550.00 per hour for work performed in 2006, b) Jonathan Nachsin, with whom I have worked before, charged \$450.00 per hour for work performed in 2006, c) William Harte, with whom I have worked before, charged \$450.00 per hour for work performed in 2002, d) Larry Drury charged \$550.00 per hour for work performed in 2004, e) Michael B. Hyman, with whom I have worked before, charged \$460 per hour for work performed in 2004, f) Michael Hilicki, with whom I have worked before, charged \$400.00 per hour, as a senior associate, for work performed in 2006. If the Court finds that this instant certification as to the above market rates is not sufficient evidence of those rates, I am able to supplement the above information with actual copies of signed affidavits from each of the above individuals attesting to such rates.

2     The rates charged for Lance A. Raphael, Stacy M. Bardo, and others in the office have been agreed to and paid by each consumer, except those who demonstrated that they were financially unable to pay for such services. In those cases the fee was discussed and waived in a manner similar to a pro-bono matter.

3

d)   A recovery of $40,000.00 in fees and costs at our then current 2008 rates in *Smith, Robles, Flores, et al., v. Credit Union One*, 07 C 5939, by the Honorable Judge Ashman of the U.S. District Court for the Northern District of Illinois, Eastern Division, Order entered on August 19, 2008;

e)   A rate of $500.00 per hour was approved in the case of *Burns v. First American Bank*, 04 C 7682, by the Honorable Judge Kendall of the U.S. District Court for the Northern District of Illinois, Eastern Division, Order entered on June 26, 2007;

f)   A rate of $450.00 was approved in *Mimnaugh v. Toyota Motor Credit Corp., et al.*, 04 C 4607, by the Honorable Judge Mark Filip of the U.S. District Court for the Northern District of Illinois, Eastern Division, order entered February 22, 2007;

g)   A rate of $450.00 per hour was approved in the case of *Minard v. Salberg*, 06 CV 00114 RL PRC, by the Honorable Judge Paul R. Cherry of the U.S. District Court for the Northern District of Indiana, Hammond Division, order entered February 5, 2007, based upon 2006 work;

h)   A rate of $450.00 per hour was approved in the case of *Gonzalez, et al. v. Diversified Medical Records Services*, 04 CH 17127, by the Honorable Judge Bronstein of the Circuit Court of Cook County, Illinois, Chancery Division, order entered October 17, 2006;

i)   A rate of $450.00 per hour was approved in the case of *Aidara v. Bank One*, 05 CH 10845, by the Honorable Judge Palmer of the Circuit Court of Cook County, Illinois, Chancery Division, order entered October 3, 2006;

j)   A rate of $450.00 per hour was approved in the case of *Hagan v. Advance Loans, Inc., et al*, 04 C 4559, by the Honorable Judge Marovich of the U.S. District Court for the Northern District of Illinois, Eastern Division, order entered June 8, 2006;

k)   A rate of $450.00 per hour was approved in the case of *Falconer v. Asset Acceptance, et al.*, by the Honorable Judge Robert W. Gettleman of the U.S. District Court for the Northern District of Illinois, Eastern Division, order entered March 31, 2006; the fees approved accounted for 96% of counsels' fees and costs;

l)   A rate of $410.00 per hour was approved in the case of *Machiela v. Trizec Holdings, Inc.*, 05 C 3562, by the Honorable Judge Amy St. Eve of the U.S. District Court for the Northern District of Illinois, Eastern Division, order entered January 30, 2006; and

m)   A rate of $410.00 per hour was approved in the case of *Weniger v. Arrow* Financial *Services*, 03 C 6213, by the Honorable Chief Judge of the U.S. District Court for the

Northern District of Illinois, Eastern Division, Charles P. Kocoras, order entered June 20, 2005.

## Factors of Background

17. I am a 1993 graduate of the John Marshall School of Law. From 1993 until March 1996, I was employed by Teller, Levit, and Silvertrust in Chicago. From April 1996 until November 1998, I was employed by Horwitz, Horwitz & Associates.

18. In January of 1999, I founded The Consumer Advocacy Center, P.C., and I currently focus my practice on the representation of consumers in consumer rights litigation and class actions.

19. I am a member of the National Association of Consumer Advocates, a legal association devoted to the protection of consumers. I have authored the article, "Teaching an Old Law a New Trick: Repossessing Software Through Disablement," The Commercial Law Journal, Summer 1992, (advocating that the repossession of software may invariably lead to an illegal taking of personal property such as the work product of the user). I have lectured on the topic of "Proceeding in the American Arbitration Association and Issues on Class Actions" at the National Association of Consumer Advocates conference, which qualified for continuing legal education credit. I have also lectured on consumer rights topics to members of the public through the program "Law at the Library" sponsored by the Chicago Bar Association. In early May 2004, Consumer Action and its MoneyWi$c financial literacy partner Capital One held a financial training in Chicago, IL designed to teach local community groups how to talk to their clients about money and financial management, where Rolando Berrelez of the Federal Trade Commission spoke on theft of identity issues and I spoke on consumer rights.

20. In 1998, I participated in and fulfilled the requirements to accept referrals on consumer fraud related cases from various state governmental agencies through a program sponsored by the Chicago Bar Association called "Law Day," previously held at the State of Illinois Center on a monthly basis.

21. I was appointed as a speaker at the November 2004 national conference on consumer rights hosted by the National Consumer Law Center; the National Consumer Law Center (NCLC) is the nation's consumer law expert, helping consumers, their advocates, and public policy makers use powerful and complex consumer laws on behalf of low-income and vulnerable Americans seeking economic justice. Topics upon which I spoke include: auto fraud practice tips from the experts, junk fax and telemarketing litigation, and arbitrating consumer cases.

22. I am a repeat guest lecturer for Lorman Education Services, a national continuing legal education seminar service, where I have spoken on consumer issues related to foreclosure, repossession, and debt collection.

## Litigation Experience

23. I have been and am currently involved in a number of consumer and class action

cases. The number of such cases are to numerous to list, but some of those cases include:

- *Allen v. Homemakers*, 97M1113951, (Truth in Lending Act class action; class certified, settled, Illinois State Court, Cook County);
- *Ambalu v. Zwicker and Associates*, 98-CV-5945 (RLM) (Fair Debt Collection Practices Act, "FDCPA;" state-wide class action);
- *Bauer v. Reidler*, 97 L 36, N (Consumer Fraud Act class action; national class certified through settlement, Illinois State Court, Cook County);
- *Bleich v. Nationsbanc Auto Leasing*, 99-0761 (DRH) (Consumer Lease Act; national class certified through settlement, settlement pending before the Honorable Judge Denis Hurley for $500,000.00 to the class of 103,000 members, fees of $175,000.00 among four firms, rate of $360.00 per hour for attorneys fees for Lance A. Raphael);
- *Burns v. First American Bank*, 04 C 7682, (Electronic Funds Transfer Act, national class certified through settlement);
- *Carter v. Unilever Hand Lotion*, 00 L 41 (national class action, settled);
- *Cohen, Stueckrad, Perper and Sanders v. Blockbuster Entertainment, Inc.*, 99 CH 02561, 99 CH 08984, Judge Biebel, (certified a merits class of 42 million nationally; held to be adequate class counsel);
- *Denihan v. Northwest Collectors*, 99 C 1649 (FDCPA, settled);
- *Gelis v. Freedman*, 99 C 6275 (FDCPA, settled);
- *Louis Gorchoff v. E.R. Solutions, Inc.*, C00-2168-Z (Fair Debt Collection Practices Act, State-wide class action certified through motion, later settled on a class basis);
- *Hohmann v. Universal Fidelity*, 98 C 8168, (FDCPA state-wide class action; my first contested petition for fees with Judge Zagel awarding fees based upon an hourly rate of $225.00 per hour);
- *Holman v. Spring Lakes Mobile Home Estates*, 05 CH 3842, (class action for violations of the Illinois Consumer Fraud Act and the Mobile Home Landlord and Tenant Rights Act; Circuit Court of Cook County, Chancery Division);
- *Kaplan v. Assetcare, Inc., Equifax Information Services, Inc., Columbia/HCA Healthcare Corporation, d/b/a Columbia Aventura Hospital & Medical Center*, 99-412-CIV-GOLD/JOHNSON, (FDCPA state-wide class action regarding violation of Florida Insurance Code);
- *Kirk v. Compaq Computer Corporation*, 97 C 5839 (National class action for deceptive service fees; federal RICO claims dismissed and remanded to state court of Harris County Texas);
- *Mailloux v. Arrow Financial Services*, 01-CV-2000 (JBW), (FDCPA state-wide class action certified through motion, class of 5,000 members);
- *McCabe v. Crawford*, 01 C 8194 (a state wide class action under the Fair Debt Collection Practices Act);
- *McCoy v. Lincoln Harbor Village*, 96 C 5200 (Federal Fair Labor Standards Act and Illinois Wage Payment and Collection Act; U.S. District Court for the Northern District of Illinois);
- *Michaels v. U.S. Robotics/3Com*, 97 CH 14417, 97 CV 769903 (National Consumer Fraud class action, Illinois State Court, Cook County and California State Court; class certified and settled for $15,000,000.00 in class benefits, $1,500,000.00 in

6

attorney's fees);

- *Milburn v. Jel Sert Corporation*, 98 C 0639 (Race discrimination class action; settled for \$500,000.00; U.S. District Court for the Northern District of Illinois);
- *Moore v. Joe Rizza Chevy*, 99 C 1143 (Odometer fraud case; settled);
- *Puzis v. Duralube*, 99 0172523 S (Unfair and deceptive business practices act claim, national class action, settled for approximately \$4,000,000.00 in value to the class, \$950,000.00 in attorney's fees, Rate of \$320.00 per hour for attorneys fees);
- *Safir v. Soulmates, Inc.*, 06 CH 11047, (class action filed for fraudulent inducement, Circuit Court of Cook County, Chancery Division);
- *Sanders v. OSI Education Services, Inc.*, 01 C 2081 (Fair Debt Collection Practices Act state class action certified and settled);
- *Schmidt v. Nissan Motor Acceptance Corporation*, 99 C 7180 (National Consumer Leasing Act class action; settled);
- *Smith, et al. v. Credit Union 1*, 07 C 5939, (Electronic Fund Transfers Act; U.S. District Court for the Northern District of Illinois);
- *Stowe, Smith & Lovejoy v. PayDay Loan of Illinois, Inc.*, 99 CH 11461 (Truth in Lending Act, Consumer Installment Loan Act, Illinois Interest Act, Consumer Fraud; state-wide class action, settled);
- *Sutton v. Viking Oldsmobile*, CV 98-900 JMR/FLN (Minnesota state class action, Truth in Lending Act yield spread premium violation);
- *Wermer v. Momax Builders*, 98 CH 05336, (Consumer Fraud Act, Truth in Lending Act class action, Illinois State Court, Cook County);
- *Weniger v. Arrow Financial Services*, 03 C 6213, (Fair Debt Collection Practices Act, class action certified and settled);
- *Zempel v. American Family Publishers, Dick Clark and Ed McMahon*, 98 4000 (Consumer fraud, national class action, state-wide class in fourth judicial district of Minnesota; class certified; settled); and
- *Zietek v. James Chrysler*, 96 L 14279 (Consumer Fraud Act, Illinois State Court, Cook County).

I swear under penalties of perjury that the foregoing statements are true and correct.
Dated: December 1, 2008

Lance Raphael
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, Illinois 60602

7